LEE/O'KEEFE INSURANCE AGENCY, INC., Plaintiff-Appellant, v. MICHAEL FEREGA, Defendant-Appellee.

Fourth District No. 4—87—0334

Opinion filed December 3, 1987.

Charles J. Gramlich and Daniel C. Lanterman, both of Gramlich Law Offices, P.C., of Springfield, for appellant.

Alfred B. LaBarre, of Ensel, Jones, Blanchard & LaBarre, of Springfield, for appellee.

JUSTICE SPITZ delivered the opinion of the court:

This action was instituted in the circuit court of Sangamon County by an employer, Lee/O'Keefe Insurance Agency, Inc. (Lee/O'Keefe), seeking injunctive relief against a former employee, Michael Ferega, based upon two restrictive covenants contained in an employment contract entered into by the parties. The trial court issued a temporary restraining order without a hearing. Subsequently, a hearing was held on Lee/O'Keefe's request for a preliminary injunction and testimony was presented on the issues raised in Lee/O'Keefe's complaint. Following the hearing, the trial court dissolved the temporary restraining order and denied Lee/O'Keefe's request for a preliminary injunction, finding the terms of the restrictive covenants were unreasonable and unenforceable. Lee/O'Keefe now appeals from the trial court's order denying further injunctive relief and from the denial of his motion for reconsideration.

The record reveals that Michael Ferega became employed with Lee/O'Keefe as an insurance salesman on September 1, 1980. Lee/O'Keefe has one office, located in Springfield, Illinois. During the first year of his employment with Lee/O'Keefe, Ferega had no employment contract. On May 4, 1981, Ferega was asked to sign an employment contract which contained the following provisions:

"7. Disclosure of Information. The Employee recognizes and acknowledges that the list of the Employer's customers, as it may exist from time to time, is a valuable, special and unique asset of the Employer's business. The Employee will not, during or after the term of his employment, disclose the list of the Employer's customers or any part thereof to any person, firm, corporation, association or other entity for any reason or purpose whatsoever. The Employee will not during or after the term of his employment use the list of the Employer's customers or any part thereof for any business purpose other than those business purposes of the Employer. In the event of a breach or threatened breach by the Employee of the provisions of this paragraph, the Employer shall be entitled to an injunction restraining the Employee from disclosing, in whole or in part, the list of the Employer's customers, or from rendering any services to any person, firm, corporation, association or other entity to whom such list, in whole or in part, has been disclosed or is threatened to be disclosed. Nothing herein shall

be construed as prohibiting the Employer from pursuing any other remedies available to the Employer for such breach or threatened breach, including the recovery of damages from the Employee.

\* \* \*

13. <u>Restrictive</u> <u>Covenant</u>. For a period of five years after the terms of this agreement, the Employee will not, within a radius of 100 miles from the present place of business for the Employer directly or indirectly, own, manage, operate, control, be employed by, participate in or be connected in any manner with the ownership, management, operation or control of any business soliciting the type of business from the customers of the Employer. In the event of an actual or threatened breach by the Employee of the provisions of this paragraph, the Employer shall be entitled to an injunction restraining the Employee from owning, managing, operating, controlling, being employed by, participating in, or being in any way so connected with any business similar to the type of business conducted by the Employer at the time of termination of this agreement. Nothing herein stated shall be construed as prohibiting the Employer from pursuing any other remedies available to the Employer for such breach or threatened breach, including the recovery of damages from the Employee."

The 100-mile radius restriction contained in paragraph 13 covers 60 counties in Illinois and the city of St. Louis, Missouri.

According to Ferega, after reading the contract, he expressed his concern that the terms of the contract prohibited him from doing insurance business for five years within 100 miles in any capacity. Ferega testified that William Collins, an officer of Lee/O'Keefe, informed him that all the contract did was prevent Ferega from doing business in a 100-mile radius for five years with those people Lee/O'Keefe considered to be their clients. He further testified that Collins informed him that he probably would not get paid if he refused to sign the contract. According to Ferega, he then signed the contract with the reservation that he and Collins disagreed as to its interpretation.

On January 21, 1987, Ferega tendered his resignation to Lee/O'Keefe. According to Ferega, during the course of his employment he did not have access to Lee/O'Keefe's computer or its master list of customers. Ferega did maintain 3 x 5 cards on his own customers which he took with him when he left. Ferega testified that he could duplicate this list from memory with the assistance of a telephone

book. Ferega also kept some copies of old policies, applications, logbooks and calendars.

After leaving Lee/O'Keefe, Ferega became employed with T. J. Nicoud & Company in Springfield, Illinois, one of Lee/O'Keefe's competitors. Ferega wrote letters to the persons named on his 3 x 5 cards advising them of his departure from Lee/O'Keefe, informing them he was employed with T. J. Nicoud & Company and that their account would continue to be serviced by Lee/O'Keefe. The persons were advised that if they had any questions they could call Ferega. Counsel for Lee/O'Keefe then wrote Ferega advising him that his employment contract with Lee/O'Keefe prohibited him from accepting employment with T. J. Nicoud & Company.

On February 4, 1987, Lee/O'Keefe filed a motion for a temporary restraining order and a complaint in the circuit court of Sangamon County. The motion requested the court enter a temporary order restraining Ferega from violating the terms of the aforementioned employment contract. The complaint alleged that Ferega had violated the terms of the employment contract by: (1) advertising in the Illinois State Journal Register that he had become associated with T. J. Nicoud & Company; (2) sending communications directly to his former customers, informing them of his new association; and (3) copying confidential information about Lee/O'Keefe's customers without authorization shortly before he resigned. The complaint further alleged that three of Lee/O'Keefe's customers had transferred their insurance policies to T. J. Nicoud & Company. The complaint sought the issuance of a preliminary injunction, prohibiting Ferega from using Lee/O'Keefe's customer lists and other information and prohibiting Ferega from soliciting its customers located within a 100-mile radius of Springfield, Illinois, for a period of five years.

On February 5, 1987, without a hearing, the trial court issued a temporary restraining order, based upon the allegations of Lee/O'Keefe's verified complaint. The order enjoined and restrained Ferega from using Lee/O'Keefe's customer lists and all other information he obtained about its customers and prohibited him from soliciting Lee/O'Keefe's customers.

On February 17, 1987, Ferega filed his answer to Lee/O'Keefe's complaint and affirmative defenses. Ferega alleged that the restrictive covenants contained in paragraphs 7 and 13 of the employment contract were unenforceable and illegal as a matter of law. Specifically, Ferega alleged that the contract was lacking in consideration, that the temporal and geographical restrictions contained in the employment agreement were unreasonable, and that Lee/O'Keefe had no

protectable business interest.

A hearing on Lee/O'Keefe's request for a preliminary injunction commenced on February 20, 1987. The testimony presented at the hearing will be discussed where relevant to the issues presented. On April 6, 1987, the court entered its memorandum opinion dissolving the temporary restraining order and denying any further injunctive relief. The court found that the restrictive covenant contained in paragraph 13 of the employment contract was unreasonable and unenforceable, as worded, and "effectively prohibits [Ferega] from engaging in his occupation and prohibits him from earning a livelihood." Regarding paragraph 7, the court found the terms of that restrictive covenant were also unreasonable and unenforceable. In addition, the court found that the telephone book kept by Ferega, containing the telephone numbers of customers Ferega had serviced while employed with Lee/O'Keefe, was not a protectable business interest. The opinion indicated that a written order would follow. Lee/O'Keefe's subsequent motion for reconsideration was denied. On April 24, 1987, the court entered its written judgment order summarizing its rulings as set forth in the memorandum opinion. In addition, the trial court declined to modify or amend the restrictive provisions of paragraph 13 of the employment contract "as these provisions are unreasonable and unenforceable."

Lee/O'Keefe now appeals from the order of the trial court denying injunctive relief and from the denial of its motion for reconsideration.

Lee/O'Keefe contends, on various grounds, that the trial court's findings are contrary to the manifest weight of the evidence and that a preliminary injunction should have been entered. Ferega contends that the trial court correctly found the restrictive covenants were unreasonable and, therefore, the preliminary injunction was properly denied.

■ Initially, we note that a preliminary injunction is a provisional remedy granted to preserve the status quo, *i.e.*, the last, peaceable uncontested status which preceded the litigation, pending a hearing of the case on its merits. (*Hydroaire, Inc. v. Sager* (1981), 98 Ill. App. 3d 758, 424 N.E.2d 719.) In order for a preliminary injunction to issue the party seeking it must establish by a preponderance of the evidence (1) he possesses a certain and clearly ascertainable right or interest needing protection; (2) there is no adequate remedy at law; (3) irreparable harm will result if it is not granted; and (4) there is a reasonable likelihood of success on the merits. (*Morrison Metalweld Process Corp. v. Valent* (1981), 97 Ill. App. 3d 373, 422 N.E.2d 1034; *Im-*

*age Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 390 N.E.2d 68.) In addition to consideration of the above criteria, the trial court must conclude that the benefits of granting the injunction outweigh the possible injury which defendant might suffer as a result thereof. (*The Packaging House, Inc. v. Hoffman* (1983), 114 Ill. App. 3d 284, 448 N.E.2d 947; *Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6.) Finally, as the decision to grant or deny preliminary injunctive relief rests within the sound discretion of the trial court, and because its findings may not be disturbed absent a showing of an abuse thereof (*Shorr Paper Products, Inc. v. Frary* (1979), 74 Ill. App. 3d 498, 392 N.E.2d 1148; *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414), the role of a reviewing court is limited to a determination of whether those findings are contrary to the manifest weight of the evidence. *Hydroaire, Inc. v. Sager* (1981), 98 Ill. App. 3d 758, 424 N.E.2d 719.

■ The propriety of injunctive relief in the present case depends upon the enforceability of the restrictive covenants at issue. Because such covenants operate at least as partial restraints of trade, they are scrutinized carefully by the courts to ensure that their intended effect is not the prevention of competition *per se.* (*Hydroaire, Inc. v. Sager* (1981), 98 Ill. App. 3d 758, 424 N.E.2d 719.) Courts have upheld the enforcement of a restrictive covenant by injunction where a party to a contract agrees, in exchange for certain benefits, to refrain from competing with his employer following termination of the employment relationship (*Morrison Metalweld Process Corp. v. Valent* (1981), 97 Ill. App. 3d 373, 422 N.E.2d 1034), and the temporal and geographical limitations of the contract (*Tower Oil & Technology Co. v. Buckley* (1981), 99 Ill. App. 3d 637, 425 N.E.2d 1060), as well as its effect upon the parties and the public (*Morrison Metalweld Process Corp. v. Valent* (1981), 97 Ill. App. 3d 373, 422 N.E.2d 1034), are reasonable. This determination necessarily depends upon the facts and circumstances of each case. *J. D. Marshall International, Inc. v. Fradkin* (1980), 87 Ill. App. 3d 118, 409 N.E.2d 4.

The restrictive covenants in the instant case are contained in paragraphs 7 and 13 of the employment agreement entered into by the parties. First, paragraph 7 prohibits the employee, during or after the term of his employment, from disclosing the employer's customer list to any entity and from using the customer list for any business purpose other than the business purposes of the employer. The remedy for breach, provided in paragraph 7, is that the employer shall be entitled to an injunction restraining the employee from disclosing the customer list or from rendering any services to any entity to which

the list has been disclosed. The trial court determined that paragraph 7 was unenforceable. The court found that the only item taken by Ferega upon the termination of his employment with Lee/O'Keefe was a telephone book Ferega compiled containing the telephone numbers of customers he had serviced through the years and that this did not constitute a protectable interest. Further, the court did not believe that the customers' relationship was "near-permanent." Finally, the court found that the restrictions in paragraph 7 were unreasonable, as paragraph 7 contained no temporal or geographical limitations.

 ■ We cannot say that the findings of the trial court are contrary to the manifest weight of the evidence. Ordinarily, an employer has no proprietary interest in its customers. (*The Packaging House, Inc. v. Hoffman* (1983), 114 Ill. App. 3d 284, 448 N.E.2d 947.) However, courts have held that there are two general situations in which such an interest may be found to exist for purposes of enforcing a restrictive covenant: (1) where the former employee acquired confidential information through his employment and subsequently attempted to use it for his own benefit; and (2) where, by nature of the business, the customer relationship is near-permanent and, but for his association with plaintiff, defendant would not have had contact with the customers in question. (See *Instrumentalist Co. v. Band, Inc.* (1985), 134 Ill. App. 3d 884, 889, 480 N.E.2d 1273, 1279 (and cases cited therein).) Conversely, no such protectable interest is recognized, rendering thereby a noncompetition covenant unenforceable, where it is determined that the customer list is not confidential (*House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 225 N.E.2d 21), the customer relationship is short term or impermanent (*McCormick v. Empire Accounts Service, Inc.* (1977), 49 Ill. App. 3d 415, 364 N.E.2d 420), or no other trade secret or secret information is imparted to the employee (*Isabelli v. Curtis 1000, Inc.* (1975), 31 Ill. App. 3d 1030, 335 N.E.2d 538).

In the instant case, the evidence does not suggest that Ferega misappropriated any confidential information or trade secrets acquired while in Lee/O'Keefe's employ. Nor does the evidence demonstrate that Lee/O'Keefe's relationship with its customers was near permanent. Ferega did not have access to Lee/O'Keefe's computer nor did he have the key to the computer. Thus, Ferega did not have access to Lee/O'Keefe's master computer list of customers. Ferega did maintain 3 x 5 cards which he took with him upon the termination of his employment. The 3 x 5 cards contained the telephone numbers of customers he had serviced. Ferega obtained this information from three calendar lists which were previously provided to him but due to

their age may now be obsolete. Ferega was not asked to return the calendar lists to the company prior to or upon the termination of his employment. Further, as was noted by the trial court, no employees were asked to return the calendar lists after they were utilized to send calendars to the people listed. Moreover, Ferega testified that he could duplicate the list from memory with the assistance of a telephone directory. The information taken by Ferega was names, addresses, and phone numbers that were readily obtainable by anyone wishing to contact them. Regarding the relationship between Lee/O'Keefe and its customers, the record indicates that it was short term, as there was a steady turnover of customers, and that the contracts involved were all one year in duration. We conclude, therefore, that the manifest weight of the evidence adduced at the hearing does not contradict the trial court's findings that the customer information was not a protectable business interest and that the customer relationship was impermanent.

We note that the court also determined that the restrictive covenant in paragraph 7 was unreasonable as it contained no time or geographical limitations whatsoever. However, as no protectable interest has been shown sufficient to trigger enforcement of the restrictive covenant, we need not consider the contention concerning the scope of the restrictive covenant. See generally *Hydroaire, Inc. v. Sager* (1981), 98 Ill. App. 3d 758, 424 N.E.2d 719.

We now turn to the second restrictive covenant at issue, contained in paragraph 13 of the employment contract. Paragraph 13 provides that "the employee will not *** directly or indirectly, own, manage, operate, control, be employed by, participate in or be connected in any manner with the ownership, management, operation or control of any business soliciting the type of business from the customers of the employer." The remedy for breach provided in paragraph 13 is that the employer shall be entitled to an injunction restraining the employee from "owning, managing, operating, controlling, being employed by, participating in, or being in any way so connected with any business similar to the type of business conducted by the employer." The scope of the restrictive covenant is for a period of five years and encompasses a 100-mile radius of Lee/O'Keefe's Springfield, Illinois, office. The trial court determined that this restrictive covenant was overbroad, unreasonable and unenforceable, noting that the covenant "as worded, effectively prohibits this defendant from engaging in his occupation and prohibits him from earning a livelihood."

Lee/O'Keefe contends that the terms of the restrictive covenant are reasonable and that the trial court's findings are against the man-

ifest weight of the evidence. It is Lee/O'Keefe's position that the wording in paragraph 13 does not prohibit the employee from being employed by a business which solicits the type of business it sells but only prohibits the employee from soliciting its customers. We disagree.

Based upon our reading of the restrictive covenant, we cannot say the trial court's findings are contrary to the manifest weight of the evidence. As previously discussed, the enforceability of a restrictive covenant in an employment contract is dependent upon its reasonableness in terms of its impact on the parties to the contract and on the public. (*House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 225 N.E.2d 21.) A restrictive covenant may be held enforceable only if the time limit and geographic scope are reasonable, trade secrets or confidential information are involved, and the restriction is reasonably necessary for the protection of a legitimate business interest. (*Image Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 390 N.E.2d 68.) Whether the prohibitions of a restrictive covenant are unreasonably broad depends upon the facts of each case. *Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6.

In our opinion, prohibitions contained in the restrictive covenant in paragraph 13 are unreasonably broad. The temporal limitation here is for a period of five years and the geographical limitation encompasses any area within a 100-mile radius of Springfield, Illinois. According to the exhibits in the record, this involves 60 Illinois counties and the city of St. Louis, Missouri. Furthermore, the covenant prohibits the employee from either directly or indirectly "owning, managing, operating, controlling, becoming employed by, participating in or being in any way so connected with any business similar to the type of business conducted by" Lee/O'Keefe. Hence, we cannot say the trial court's finding that the restrictive covenant is unreasonable is contrary to the manifest weight of the evidence. In reaching our conclusion we point out that there is a strong presumption in favor of the findings of the trial court which has heard the testimony of the witnesses, observed their demeanor, considered the documentary evidence and the pleadings, and has heard the oral arguments of counsel. *Marth v. Illinois Weather-Seal, Inc.* (1977), 50 Ill. App. 3d 577, 365 N.E.2d 588.

Finally, we are unpersuaded by Lee/O'Keefe's remaining contention that the trial court erred in refusing to modify the terms of its own contract. Although a court of equity may, under some circumstances, modify the restraint in a contract of employment (*House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 225 N.E.2d 21; *McRand,*

*Inc. v. Van Beelen* (1985), 138 Ill. App. 3d 1045, 486 N.E.2d 1306), we believe the trial court was acting within its discretion in denying modification here. A modification of the contract under the circumstances here would have involved more than a temporal or geographical modification and would have been tantamount to drafting a new contract. Moreover, it could have the potential effect of discouraging the narrow and precise draftsmanship which should be reflected in written agreements.

For the foregoing reasons, the judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

GREEN, P.J., and KNECHT, J., concur.