**FORMAX, INC., Plaintiff–Appellant,**

v.

**Allan C. HOSTERT, Kris Hostert, Gary L. Jugles and the Dale Service Group, Defendants–Appellees.**

No. 87–1389.

United States Court of Appeals, Federal Circuit.

Decided Feb. 16, 1988.

Opinion Feb. 26, 1988.

William J. Holloway, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., argued for plaintiff-appellant. With him on the brief were Thomas S. Malciauskas, Nancy G. Lischer and H. Anne McKee.

Jonathan B. Gilbert, David P. Schippers and Associates, Chartered, Chicago, Ill., argued for defendants-appellees. With him on the brief was David P. Schippers. Also on the brief were John T. Kelly, of Joliet, Ill. and Walter E. Wyss, Mason, Kolehmainen, Rathburn & Wyss, of Chicago, Ill., of counsel.

Before RICH, Circuit Judge,
NICHOLS, Senior Circuit Judge, and
NEWMAN, Circuit Judge.

NICHOLS, Senior Circuit Judge.

Formax, Inc. appeals from the decision of the United States District Court for the Northern District of Illinois, No. 86 C 2648, dismissing on motion Formax's Racketeer Influenced and Corrupt Organizations Act (RICO) count and denying Formax's request for a preliminary injunction. We affirm that section of the opinion and order denying Formax's preliminary injunction, and reverse and remand that section of the opinion and order dismissing the RICO count.

### Facts

Appellee, Hostert, is a former employee of Formax, Inc., alleged to have stolen some drawings claimed to be trade secrets and to have infringed Formax's patent. A theft of appellant's drawings allegedly occurred at Hostert's employment termination. He acquired others from one of Formax's vendors. Formax says all its drawings include the proper notice that they are proprietary information. The complaint includes a count asserting that Hostert violated the RICO statute through a pattern of racketeering activity. The patent count is not involved in the present appeal. The main question at hand is whether the court erred in finding that appellant's complaint insufficiently pled a RICO violation.

In reviewing the trial judge's decision, this court must focus on a two-fold inquiry:

1. whether the trial court applied the correct standard in construing appellant's complaint in light of appellee's motion; and

2. what elements of RICO must be pled in order to satisfy notice pleading as construed in the Seventh Circuit.

At the outset, we find some confusion in the record inasmuch as the court said it was acting on a motion for summary judgment, yet the entire focus of its fairly lengthy opinion is, with respect to the RICO count, on the allegations of the complaint. These too are lengthy and elaborate. The court holds them insufficient. There is not a word about any evidence being considered, submitted by either side, supporting or opposing the motion, that entered into the determination. We consider, therefore, for purposes of our review, that the court determined the complaint itself, in count 1, to be deficient and therefore dismissed it on motion. Appellant's complaint, when properly construed, requires reinstatement of appellant's RICO count.

■ The trial court misconstrued the requirements of a RICO violation. Sections 1962(b) and 1964(c), respectively, define the elements of a RICO violation. 18 U.S.C. § 1962(b) provides:

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1964(c) provides:

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Therefore, in order to plead a RICO count successfully, the plaintiff must allege,

among other elements, an injury to his business or property by reason of a violation of section 1962. The complaint requires sufficient specificity so as to satisfy Fed.R.Civ.P. 9(b). *See, e.g., Systems Research, Inc. v. Random, Inc.,* 614 F.Supp. 494 (N.D.Ill.1985) (complaint was sufficiently specific so as to satisfy the requirements of Fed.R.Civ.P. 9(b)). We hold the RICO count was sufficiently pled so as to defeat a motion to dismiss.

The trial court held:

Formax has not alleged that defendants made any fraudulent misrepresentation or omission to the public as to the Formax prints. [Footnote omitted.] Neither has Formax shown how defendants' collection efforts furthered defendants' alleged fraudulent scheme. In short, defendants' alleged conduct did not involve any fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence or comprehension. App. at 8.

In so holding, the trial court imposed an inappropriate burden on appellant in its pleading of a RICO count and thus incorrectly granted appellees' motion. *See, e.g., Sedima, S.P.R.L. v. Imrex Company,* 473 U.S. 479, 495-96, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) ("If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c). * * * The plaintiff must, of course, allege each of these elements to state a claim"). While recognizing mail/wire fraud as possible predicate acts to support a violation of RICO, the trial court misapplied the law. That court apparently construed the mail fraud statute to require a fraud to be exercised upon the recipients of the mail sent and that such a fraud be proven. However, the Supreme Court in *Carpenter v. United States,* —— U.S. ——, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987) (commonly referred to as the Winans case), succinctly dispenses with such an interpretation by broadly defining property and fraud under the terms of the mail and wire fraud statutes. According to the Supreme Court, Winans de-

frauded his employer, the Wall Street Journal, by stealing the content of his as yet unpublished comments on the value of stocks, and selling the information to parties not entitled to have it, by using the mails or wires.

■ In *Carpenter,* the Court reacknowledged that confidential business information is property. *Carpenter,* 108 S.Ct. at 320; *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1001-04, 104 S.Ct. 2862, 2871-73, 81 L.Ed.2d 815 (1984); *Board of Trade of Chicago v. Christie Grain & Stock Co.,* 198 U.S. 236, 250-51, 25 S.Ct. 637, 639-40, 49 L.Ed. 1031 (1905). The Court then held that defrauding one out of such property by theft of a business secret satisfies "the 'common understanding' of 'wronging one in his property rights by dishonest methods or schemes' and 'usually signif[ies] the deprivation of something of value by trick, deceit, chicane or overreaching.'" [Citation omitted.] *Carpenter,* 108 S.Ct. at 320. Activities such as those alleged in the instant case—misappropriation of trade secrets—fall within the definition of property and fraud under the mail and wire fraud statutes and thus can fulfill some elements of a RICO violation. *Spiegel v. Continental Illinois Nat'l Bank,* 790 F.2d 638, 649 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986). The Supreme Court does not require any fraud necessarily to be exercised upon the recipients of the mail in order to satisfy the elements of mail fraud. *Carpenter, supra,* 108 S.Ct. at 320-21.

■ The Seventh Circuit, whose law controls the matter before us, *see Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1575, 223 USPQ 465, 471 (Fed. Cir.1984), has stated the pleading requirements necessary to support a civil RICO action. The plaintiff must allege an injury to his business or property by reason of a violation of 18 U.S.C. § 1962. *See Tellis v. United States Fidelity & Guaranty Co.,* 826 F.2d 477 (7th Cir.1987); *Spiegel, supra; United States v. Bonansinga,* 773 F.2d 166 (7th Cir.1985), *cert. denied,* 476 U.S. 1160, 106 S.Ct. 2281, 90 L.Ed.2d 723 (1986); *Haroco, Inc. v. American Nation-*

al Bank and Trust Company of Chicago, 747 F.2d 384 (7th Cir.1984), *cert. granted,* 469 U.S. 1157, 105 S.Ct. 902, 83 L.Ed.2d 917 (1985). Following the precepts of the Federal Rules of Civil Procedure, Fed.R.Civ.P. 9(b), allegations of RICO violations must be pled with sufficient specificity so as to place the party being sued on notice of the issues involved in the suit. *Sutliff, Inc. v. Donovan Companies,* 727 F.2d 648, 653 (7th Cir.1984). *See also Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 791–92 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985) (plaintiff need not allege specific evidentiary details needed to prove his claim at trial in order to satisfy Rule 9(b) specificity); *Tomera v. Galt,* 511 F.2d 504, 508 (7th Cir.1975) (bare bones averments of fraudulent schemes coupled with plaintiff's allegations that defendant used the mails in interstate commerce satisfies sufficient pleading for a § 10–b action); *Pandick, Inc. v. Rooney,* 632 F.Supp. 1430, 1436 (N.D.Ill.1986) ("The complaint adequately informs the defendants which * * * laws are alleged to have been violated and how they were allegedly violated").

■ Pursuant to Fed.R.Civ.P. 9(b), under the Seventh Circuit's approach, appellant's second amended complaint satisfies the notice pleading requirements and the factual allegations of mail and wire fraud necessary to satisfy the elements of a RICO claim. The complaint makes continuous references to the parties initiating the racketeering activity—*i.e.,* Allan Hostert and the Dale Service Group; alleges the specific activities of misappropriation of trade secrets and the method of use of the mails to further the misappropriation as part of racketeering activities; and, states that the moneys obtained from the misappropriation of trade secrets through wire/mail were used to further defendants' racketeering activity. *See* App. at 66–76.

The trial court held:

Formax has not sufficiently pled mail/wire fraud as predicate acts for its RICO claim. Formax's allegations are vague and conclusory; they do not state either the content of the communications or the particular defendant involved. App. at 7.

In so holding, the trial court ignored allegation 28's list of invoices, dates, and customers as sufficient to plead RICO predicate acts. The trial judge stated that Formax did not allege any fraudulent misrepresentations nor the particular defendants involved. App. at 7–8. A close examination of appellant's second amended complaint, allegation 28, however, reveals that the trial judge erred. Paragraph 28 alleges that the defendants, Hostert and the Dale Service Group, mailed misappropriated trade secret information to a series of customers on specific dates. Clearly, such information satisfies the requirement that the content of the communications, the particular defendants, and the scheme to defraud, all be listed in the complaint. App. at 69–71 and 7.

Therefore, under a thorough and fair reading of appellant's second amended complaint and the cases noted above, this court holds that the trial court erroneously dismissed appellant's RICO count. The RICO count should be reinstated.

■ The trial court's denial of appellant's preliminary injunction, however, is affirmed as an appropriate exercise of the trial court's broad discretion in passing on the issues attendant to a motion for preliminary injunction. *H.H. Robertson, Co. v. United Steel Deck, Inc.,* 820 F.2d 384, 391, 2 USPQ2d 1926, 1930 (Fed.Cir.1987); *Atlas Powder Co. v. Ireco Co.,* 773 F.2d 1230, 1234, 227 USPQ 289, 293 (Fed.Cir.1985). The evidence, as adduced, left the trial court uncertain whether the appellant guarded the alleged trade secrets closely enough to justify treating them as trade secrets. There was a prolonged failure on appellant's part to invoke legal proceedings after it first had reason to believe Hostert had stolen trade secret material. There was no showing appellant would suffer injury irreparable and noncompensable by money damages, if appellees were left free to conduct their business during the course of subsequent proceedings. Additionally, the trial judge stated that Formax failed to show that it would probably succeed on the

merits on its trade secret claims. The fact that so many vendors and customers were familiar with Formax's confidential information undercut any success possible on a trade secret claim seeking injunctive relief.

### Conclusion

Accordingly, we affirm that section of the opinion and order denying Formax's preliminary injunction, and reverse and remand that section of the opinion and order dismissing the RICO count.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

PAULINE NEWMAN, *Circuit Judge,* concurring in part, dissenting in part:

### I

I join that portion of the court's opinion reversing the dismissal of the RICO count.

### II

I respectfully dissent from the court's decision denying the injunction *pendente lite.* Formax requested that the Formax manufacturing prints in defendants' possession be turned over to a custodian during the litigation and that the defendants be enjoined from using the information obtained therefrom. The requirements for this limited preliminary relief appear to be well met, and entirely in accord with Illinois law and the interests of justice.

Mr. Hostert admitted that he personally took some of the manufacturing prints from the Formax offices, and that he obtained over six hundred more from persons to whom Formax had entrusted them for the purpose of manufacture of Formax's machines. When a party has possession of and is using the tangible property of another, as was here admitted, justice requires that the party not profit therefrom while the case wends its way through the courts. *See Affiliated Hospital Products, Inc. v. Baldwin,* 57 Ill.App.3d 800, 15 Ill.Dec. 528, 532–33, 373 N.E.2d 1000, 1004–05, 202 USPQ 220, 224 (Ill.App.Ct.1978) (when defendants had possession of and used drawings found to be the confidential property of plaintiff, denial of preliminary injunction was abuse of trial court's discretion).

The provenance of the manufacturing prints was established before the district court, without substantial dispute, through several witnesses. It appears unchallenged that each document was identified as the property of Formax and carried a legend prohibiting unauthorized use:

NOTICE This drawing or other document contains proprietary information of Formax, Inc. and is not to be used, reproduced or disclosed without express written permission.

No possession of this property as of right has been shown, or even seriously argued, by the defendants. Illinois law establishes that documents of this sort are accorded legal protection. *Schulenburg v. Signatrol, Inc.,* 33 Ill.2d 379, 387, 212 N.E.2d 865, 869, 147 USPQ 167, 171 (1965), *cert. denied,* 383 U.S. 959, 86 S.Ct. 1225, 16 L.Ed.2d 302 (1966):

It is clear that an employee may take with him ... general skills and knowledge acquired during his tenure with the former employer. It is equally clear that the same employee may not take with him, confidential particularized plans or processes developed by his employer and disclosed to him while the employer—employee relationship exists, which are unknown to others in the industry and which give the employer advantage over his competitors.

The Illinois standard for granting preliminary injunctions was recently stated in *Lee/O'Keefe Ins. Agency, Inc. v. Ferega,* 163 Ill.App.3d 997, 114 Ill.Dec. 919, 516 N.E.2d 1313, (1987):

Initially, we note that a preliminary injunction is a provisional remedy granted to preserve the status quo, i.e., the last, peaceable uncontested status which preceded the litigation, pending a hearing of the case on its merits. In order for a preliminary injunction to issue the party seeking it must establish by a preponderance of the evidence (1) he possesses a certain and clearly ascertainable right or interest needing protection; (2) there is no adequate remedy at law; (3) irrepara-

ble harm will result if it is not granted; and (4) there is a reasonable likelihood of success on the merits. In addition ... the trial court must conclude that the benefits of granting the injunction outweigh the possible injury which defendant might suffer as a result thereof. Finally, as the decision to grant or deny preliminary injunctive relief rests within the sound discretion of the trial court, and because its findings may not be disturbed absent a showing of an abuse thereof, the role of a reviewing court is limited to a determination of whether those findings are contrary to the manifest weight of the evidence. [citations omitted]

Formax's right to the drawings is uncontested, as Mr. Hostert admitted that he had taken, and concealed his possession of, the Formax prints. Illinois law does not condone such actions. Thus there is a reasonable likelihood that Formax will prevail on the merits of the issue of ownership of the manufacturing prints now in defendants' possession. *Schulenburg*, 33 Ill.2d at 387, 212 N.E.2d at 869, 147 USPQ at 171. To authorize such continuing possession and use will unjustly favor the wrongdoer to the continuing and irreparable injury of the wronged. *See Lawter Int'l, Inc. v. Carroll*, 116 Ill.App.3d 717, 731, 72 Ill.Dec. 15, 25, 451 N.E.2d 1338, 1348 (1983) (irreparable injury is shown "when the plaintiff will be subject to transgressions of a continuing nature, constant and frequent, such that no meaningful redress can be had at law"). The balance of harms strongly favors Formax.

Formax has asked for a narrow provisional remedy. It has not requested an injunction against reverse engineering of its parts and machines. The requested injunction would not bar the defendants from continuing in this business by legitimate means. *See ILG Industries, Inc. v. Scott*, 49 Ill.2d 88, 93, 273 N.E.2d 393, 397–98, 171 USPQ 371, 375 (1971) ("defendants elected to proceed in an unlawful manner although a legal means of obtaining this information [by reverse engineering] was available to them"). The interest of justice is better served by preserving the integrity of property rights in manufacturing drawings, and not condoning misappropriation of the property of another.

There is a controlling distinction between the facts of this case and those cases which turn on questions of employee mobility and the rights of employees to profit from experience gained during employment. Defendants themselves assert that the parts and machines can readily be reverse engineered. Issues of employee mobility, if there are any in this case, are not raised in the relief that Formax requested *pendente lite*.

My colleagues on this panel have apparently placed controlling weight on the time elapsed between when Formax first received information that Hostert had taken some manufacturing prints, and the request for a preliminary injunction. I agree that this is a factor to be considered. However, I am persuaded that Formax did not act unreasonably in waiting until it had evidence that defendants not only had a large number of Formax manufacturing prints but also that they were using them to produce parts and machines to Formax's significant damage. When defendants eventually, after resisting discovery, produced 678 Formax prints, Formax acted within days.

The elements supporting grant of a preliminary injunction are plainly present. In my view the district court's decision was contrary to the manifest weight of the evidence and the applicable law. The court thus exceeded its discretionary authority in declining to grant the requested preliminary injunction.