**BAXTER INTERNATIONAL, INC., Baxter Healthcare Corp., Baxter Diagnostics, Inc., Appellants,**

v.

**Roger J. MORRIS, Dr., Appellee.**

No. 92–2079.

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1992.

Decided Oct. 9, 1992.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 16, 1992.

David J. Parsons, Chicago, Ill., argued (Harry W. Wellford, Jr., Stephen D. Smith, St. Louis, Mo., and Joan M. Fencik, on the brief), for appellants.

Curtis C. Calloway, St. Louis, Mo., argued (Gary M. Smith, on the brief), for appellee.

Before McMILLIAN, JOHN R. GIBSON, and BEAM, Circuit Judges.

BEAM, Circuit Judge.

Baxter International Inc., Baxter Healthcare Corp., and Baxter Diagnostics, Inc. (collectively "Baxter"), appeal from an order of the United States District Court for the Eastern District of Missouri [1] enjoining

1. The Honorable George F. Gunn, United States District Judge for the Eastern District of Missouri.

Dr. Roger J. Morris from disclosing trade secrets he acquired during his employment with a division of Baxter for a period of one year. Baxter challenges the terms and length of the injunction and the district court's refusal to enforce a contractual noncompetition covenant. We affirm.

## I. BACKGROUND

Dr. Morris is a research scientist with a Ph.D. in physical biochemistry from the University of Salford. In early 1988, Morris, then employed as a professor at Florida State University, responded to an employment opportunity advertisement placed in a trade journal by Microscan. Microscan is a California-based division of Baxter Diagnostics, Inc., which is a wholly-owned subsidiary of Baxter International, Inc. All three Baxter corporations are incorporated in Delaware with principal places of business in Deerfield, Illinois.

Microscan extended an invitation to interview Morris in California. During the interview, Morris was offered employment in research and indicated his intention to accept. The parties agreed to a salary, but did not reach agreement on when Morris would start employment. Morris returned to Florida, where he made his decision on a starting date and telephoned a representative of Microscan to inform him of the decision. Microscan sent Morris an offer letter and an employment agreement which he signed and returned as requested.

The employment agreement signed by Morris emphasizes that Microscan entrusts Morris, as an employee, with confidential information. The agreement contains a noncompete covenant providing that:

> [i]n consequence of such entrusting and such consideration, I [Morris] WILL NOT RENDER SERVICES, DIRECTLY OR INDIRECTLY, FOR A PERIOD OF ONE YEAR AFTER THE TERMI-NATION OF MY EMPLOYMENT WITH TRAVENOL[2] to any Competing Organization in connection with any Competing Product within such geographic limits as Travenol and said Competing Organization are, or would be, in actual competition.

Joint Appendix at 18 ¶ 5.[3] The agreement also provides that "to promote uniformity in the interpretation of this and similar agreements, this agreement shall be governed by the laws of Illinois." Joint Appendix at 19 ¶ 16.

While employed at Microscan, Morris worked on various projects both as a researcher and a manager. Morris was involved with projects in the areas of bacteria identification and susceptibility determination, blood culture testing, and molecular probe technology. Morris also had access to Microscan's strategic business plans regarding these projects.

On January 31, 1992, Morris resigned his position at Microscan and accepted employment in Missouri with bioMerieux Vitek, Inc. ("Vitek"), one of Microscan's competitors. Vitek hired Morris to manage bioscience projects, initially as deputy director and eventually as director of biosciences. Both Microscan and Vitek research, develop, manufacture, and sell diagnostic equipment for use in microbiological laboratories. Microscan and Vitek are essentially the only two competitors in this particular field. The district court found that while Vitek currently dominates the market, Microscan poses a threat to Vitek because it has cut significantly into Vitek's market share.[4]

On February 25, 1992, Baxter filed a two-count complaint seeking injunctive relief against Morris in the District Court for the Eastern District of Missouri. Jurisdiction was based on diversity pursuant to 28 U.S.C. § 1332. The first count seeks to

**2.** Baxter International, Inc., was formerly known as Baxter Travenol Laboratories, Inc.

**3.** Pursuant to a protective order filed June 17, 1992, the parties were permitted to amend their briefs and the joint appendix to omit confiden-tial information. All citations to "Joint Appendix" refer to the amended joint appendix.

**4.** Evidence at trial suggested that between 1986 and 1991 Vitek's market share dropped from 98% to 71% while Microscan's market share rose from 2% to 28%. Joint Appendix at 1479.

enjoin Morris from misappropriating trade secrets. The second count seeks enforcement of the noncompete provision in Morris's contract with Baxter that prohibits Morris from working for Vitek for one year from the date he left Microscan.

Morris filed a motion on March 4, 1992, seeking a declaration that the law of California applies to the noncompete covenant notwithstanding a contractual provision declaring that the agreement shall be interpreted under Illinois law. On March 16, 1992, the court issued a memorandum and order holding that California law applies to the noncompete covenant. The district court made oral findings of fact and conclusions of law regarding Baxter's claims for injunctive relief on April 30, 1992. Under the common law of trade secret misappropriation, the court enjoined Morris for one year from using or disclosing certain items of confidential information that he acquired at Microscan. The court denied Baxter relief under the noncompete covenant, however, finding the covenant void under California law. On May 4, 1992, the court entered an order setting out in writing the terms of the April 30, 1992, injunction, and denying Baxter's motion to amend the judgment, except to order Morris to circulate a copy of the court's order to persons at Vitek who will have contact with Morris.[5] On May 20, 1992, we denied Baxter's emergency motion for stay pending appeal.

## II. DISCUSSION

Baxter presents three issues on appeal: (1) did the district court err in refusing to enjoin Morris from employment with Vitek in order to protect Baxter's trade secrets; (2) did the district court err in limiting the injunction prohibiting Morris from disclosing trade secrets to one year; and (3) did

the district court err by refusing to enforce the covenant not to compete in Morris's employment agreement with Baxter. We have jurisdiction pursuant to 28 U.S.C. § 1291.[6]

### A. Common Law Trade Secrets

Baxter argues on appeal that the district court's order erroneously permits inevitable disclosure of Microscan's trade secrets to Vitek. Baxter contends that the overlap between Microscan and Vitek in certain research and development areas makes disclosure of Microscan's technological and business planning trade secrets inevitable if Morris is allowed to work for Vitek.

■■■ As a general rule, Missouri courts[7] will grant equitable protection for an employer's interest in trade secrets. *A.B. Chance Co. v. Schmidt*, 719 S.W.2d 854, 857 (Mo.Ct.App.1986); *Mo–Kan Cent. Recovery Co. v. Hedenkamp*, 671 S.W.2d 396, 399 (Mo.Ct.App.1984). Although an exact definition of trade secrets is impossible, Missouri courts rely on six factors in determining whether given information is a trade secret:

> "(1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others."

*National Rejectors, Inc. v. Trieman*, 409 S.W.2d 1, 19 (Mo.1966) (en banc) (quoting Restatement of Torts § 757, comment b).

---

**5.** Morris filed a certificate of compliance with the court on May 7, 1992.

**6.** Morris notes in his brief that appellate jurisdiction may be lacking since no separate written final judgment has been entered. Appellee's Brief at vii and 45 n. 12. Federal Rule of Civil Procedure 58(2) requires that the final judgment of the district court be set forth in a separate document and entered on the docket sheet as provided in Rule 79(a). The May 4, 1992, order

set out the district court's injunction fully and was properly entered on the civil docket sheet on May 5, 1992. Accordingly, we hold that the May 4, 1992, order substantially complied with Rule 58. *See St. Mary's Health Ctr. of Jefferson City v. Bowen*, 821 F.2d 493, 496 (8th Cir.1987).

**7.** Since jurisdiction below was based on diversity, the district court properly applied the law of the forum state to the common law trade secret claim.

The burden of proving the existence of trade secrets lies with the party seeking protection. *Carboline Co. v. Jarboe*, 454 S.W.2d 540, 549 (Mo.1970).

After considering the six factors in *National Rejectors*, the district court found that Baxter had met its burden of proving that at least some of the information in question constituted trade secrets. The court also found that Morris had acquired trade secrets from Microscan which deserved protection. Accordingly, the district court entered an order providing that Morris may work for Vitek in any capacity, but enjoining Morris from using or disclosing certain enumerated trade secrets that he acquired while employed with Microscan. Baxter does not contest the court's findings, but argues that adequate protection of Microscan's trade secrets requires that Morris be enjoined from employment with Vitek, if not altogether, at least from working on the same type of projects as he worked on at Microscan.[8]

■ On appeal, we will not disturb the district court's balancing of the equities absent a clearly erroneous factual determination, an error of law, or an abuse of discretion. *Calvin Klein Cosmetics Corp. v. Lenox Lab. Inc.*, 815 F.2d 500, 503 (8th Cir.1987); *West Publishing Co. v. Mead Data Central, Inc.*, 799 F.2d 1219, 1222 (8th Cir.1986). *Accord A.B. Chance Co.*, 719 S.W.2d at 857 (In Missouri "[t]he issuance *and terms* of an injunction rest within the sound discretion of the trial court to shape and fashion relief, when appropriate, based on the facts and equities of the case.") (emphasis added). Under Missouri law, the restraint imposed on a former employee to protect trade secrets must not be greater than required for the protection of the former employer. *See Mo–Kan Central Recovery Co.*, 671 S.W.2d at 399. Although a former employer is not required to await actual harm

before seeking relief, "[i]njunctive relief must be based on a real apprehension that future acts are not just threatened but in all probability will be committed." *A.B. Chance Co.*, 719 S.W.2d at 857. *Accord Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir.1986).

■ The district court found that Morris is able to undertake employment with Vitek in a management capacity without divulging Microscan's trade secrets. Joint Appendix at 170. The court noted that the evidence at trial indicated that Vitek does not intend to elicit trade secrets from Morris, and in fact that Vitek has no need for that information. Joint Appendix at 133. After a careful review of the record, we cannot say that the district court's findings are clearly erroneous. There was testimony at trial that it is fairly common in the industry for employees to be hired away by competitors without disclosing trade secrets. Transcript, vol. 4 at 70–71. In fact, Dr. Godsey, Morris's superior at Microscan, testified that he had been able to transfer from a competitor in the industry to Microscan without disclosing any confidential information. Transcript, vol. 1 at 131–33. While some evidence at trial suggests that Microscan is ahead of Vitek in certain technologies, it is far from clear that Vitek will seek to develop products similar to Microscan's, or that Vitek could use Microscan's technology for its current purposes.

The district court acknowledged that delineating the breadth of its order was a difficult task. The court properly weighed the probable harm to Morris from a broader injunction against the possibility of harm to Baxter from Morris working at Vitek. *See Schlumberger Well Serv. v. Blaker*, 623 F.Supp. 1310, 1318 (S.D.Ind.1985), *aff'd*, 859 F.2d 512 (7th Cir.1988). The court found that even if Microscan compensated Morris during his restraint from employment with Vitek, a protracted absence

---

**8.** Baxter cites three cases, none decided under Missouri law, for the proposition that protection of trade secrets may require prohibiting an employee from certain lines of work for a competitor: *Allis–Chalmers Mfg. Co. v. Continental Aviation and Eng. Corp.*, 255 F.Supp. 645, 654 (E.D.Mich.1966); *Air Products and Chemicals,*

*Inc. v. Johnson*, 296 Pa.Super. 405, 442 A.2d 1114 (1982); *Eastman Kodak Co. v. Powers Film Products, Inc.*, 189 A.D. 556, 179 N.Y.S. 325 (1919). While these cases are not binding on this court, we note that each is distinguishable based on the factors discussed *infra*.

could alienate Morris's new employer. Joint Appendix at 169. Accordingly, the district court undertook the task of crafting an injunction that adequately protects Baxter from harm, while imposing no greater restraint on Morris than necessary. To provide further protection for Baxter, the district court amended its order to require Morris to circulate the injunction to Vitek employees. We find no abuse of discretion in the district court's order.

### B. Time Limitation

■ Baxter next argues that the district court erred as a matter of law in limiting the order enjoining Morris from disclosing trade secrets to the twelve-month period ending May 1, 1993. Baxter contends that the district court could not properly limit the injunction without making a finding of fact concerning the length of time in which Vitek could independently develop the information. Baxter relies on *Carboline Co.*, 454 S.W.2d at 552, and *National Rejectors, Inc.*, 409 S.W.2d at 43–44, for the proposition that Missouri has adopted a "head start" approach to trade secret protection, which requires a permanent injunction unless the defendant proves facts that allow the court to shorten the injunction.

Baxter's reliance is misplaced. In both cases cited by Baxter the trial court found that defendants had *misappropriated* trade secret information. Misappropriation requires that defendant unlawfully *use* a trade secret. *Carboline Co.*, 454 S.W.2d at 549; *National Rejectors, Inc.*, 409 S.W.2d at 35. It is the finding of misappropriation that supported the sweeping injunctions in both cases.

■ In this case, the district court specifically found that no disclosure of trade secrets or proprietary information had occurred at the time of trial. Joint Appendix at 133. Thus, Morris has not misappropriated Microscan's trade secrets. The court went on to find that Morris could fulfill his employment obligations at Vitek without disclosing trade secrets, that Vitek did not intend to elicit secret information from Morris, and that the secrets may be of no use in Vitek's products even if Vitek de-

sired to know them. In light of these findings, the district court was under no obligation to make findings concerning the length of time necessary for Vitek to develop the information independently. The court properly considered the fact that the noncompete covenant drafted by Baxter to protect its trade secrets is limited to one year. We find that the district court did not err as a matter of law in concluding that limiting the injunction to one year adequately protects Baxter.

### C. Noncompetition Covenant

Finally, Baxter argues that the district court erred in refusing to enforce the covenant not to compete contained in Morris's employment agreement with Baxter. According to Baxter, the district court should have enforced the covenant under Illinois law as provided in the agreement instead of invalidating the covenant under California law. Baxter contends that the district court's conclusion that California law applies to the covenant was reached through an erroneous interpretation of Restatement (Second) of Conflict of Laws § 187 (1971).

■ Federal district courts apply the choice of law rules of the state in which they sit when jurisdiction is based on diversity of citizenship. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320 (8th Cir.1991). On appeal, we review the district court's application of the state's choice of law rules de novo. *Whirlpool Corp.*, 929 F.2d at 1321 n. 4.

■ Missouri courts generally give effect to the parties' choice of law. *Comerio v. Beatrice Foods Co.*, 595 F.Supp. 918, 921 (E.D.Mo.1984). The validity of a contractual choice of law provision is governed by section 187 of the Restatement (Second) of Conflict of Laws (1971), which provides in pertinent part:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could

have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

. . . .

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

We agree with the district court that section 187(1) does not apply in this instance because the parties could not have provided for the enforceability of the noncompete covenant. Only a court applying the appropriate law can assess the validity of contract terms. We do not agree, however, with the district court's application of section 187(2)(b) in the present case.

■■■ Section 187(2)(b) provides a three-step process to determine whether the parties' contractual choice of law will be honored by the forum. First, the court must determine which state's law would apply in default under section 188 in the absence of an effective choice of law by the parties.[9] Second, the court must decide whether the default state has a materially greater interest in the outcome of the particular issue than the chosen state. Finally, the court must determine whether application of the law of the chosen state would be contrary to a fundamental policy of the default state.

The district court followed our prediction in *Electrical & Magneto Serv. Co. Inc. v. AMBAC Int'l Corp.*, 941 F.2d 660 (8th Cir. 1991), that Missouri courts would not rigorously follow the requirements of section 187. Accordingly, the court omitted the second step in its analysis.

Using a truncated analysis, the district court refused to enforce the noncompete covenant finding that: (1) California law would apply under section 188 in the absence of an effective choice of law by the parties; and (2) the noncompete covenant violates a fundamental policy of California. The court failed to consider whether California has a materially greater interest in the effect of the noncompete covenant than Illinois.

■■■ *Ernst v. Ford Motor Co.*, 813 S.W.2d 910 (Mo.Ct.App.1991), demonstrates, however, that Missouri courts, contrary to our prediction in *AMBAC,* will apply section 187 in its entirety. Although federal courts are not bound to follow the decisions of intermediate state courts when interpreting state law, state appellate court decisions are highly persuasive and should be followed when they are the best evidence of state law. *Aetna Casualty and Sur. Co. v. General Dynamics Corp.*, 968 F.2d 707, 712-13 (8th Cir.1992). We are convinced that *Ernst,* the most recent Missouri case, represents the best evidence of Missouri law. Accordingly, the district court erred in failing to consider whether California has a materially greater interest than Illinois in the result created by the noncompete covenant.

■■■■ After a careful review of the record, we find that California does not have a materially greater interest in the effect of the noncompete covenant than Illinois. The district court noted that California is where most of the contractual

---

**9.** Section 188 provides in pertinent part:
(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,

(d) the location of the subject matter of the contract, and
(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.

negotiations took place and where Microscan employed Morris, while Illinois is the location of the principal place of business of Baxter, Microscan's parent. The court found California's interest superior to the interest of Illinois for purposes of section 188 because California is where the employment was performed. The particular issue in the section 187(2)(b) analysis, however, is whether to enforce a post-employment restrictive covenant. Morris no longer lives in California. The interest of California in protecting Morris from the shackles of his noncompete covenant with Baxter after he has left the state is no more compelling than the interest of Illinois in protecting Baxter from competition with Morris. Thus, neither state has a materially greater interest. Pursuant to section 187(2)(b), where neither state has a materially greater interest in the controversy than the other, Missouri courts will defer to the parties' choice of law. Accordingly, the district court should have interpreted the noncompete covenant under Illinois law.

Notwithstanding the error in the district court's choice of law analysis, we find no error in denying Baxter the remedy contemplated by the noncompete covenant. In Illinois, restrictive covenants in employment agreements are enforceable only if reasonably necessary to protect a legitimate business interest of the employer. *Arpac Corp. v. Murray*, 226 Ill.App.3d 65, 168 Ill.Dec. 240, 249, 589 N.E.2d 640, 649 (1992). A restrictive covenant's reasonableness is measured by its impact on the parties, including its hardship on the employee. *Id.; Lee/O'Keefe Ins. Agency, Inc., v. Ferega*, 163 Ill.App.3d 997, 114 Ill. Dec. 919, 925, 516 N.E.2d 1313, 1319 (1987). Whether a restrictive covenant is reasonable and enforceable is a question of law. *Arpac Corp.*, 168 Ill.Dec. at 249, 589 N.E.2d at 649; *J.D. Marshall Int'l, Inc. v. Fradkin*, 87 Ill.App.3d 118, 42 Ill.Dec. 509, 512, 409 N.E.2d 4, 7 (1980).

In the present case, the employment agreement indicates that protection of trade secrets is the goal of the noncompete covenant. As we noted previously, the district court found that Morris is able to work at Vitek without disclosing Microscan's trade secrets. The court also found that even if Microscan paid Morris's salary for the year he would be forbidden to work by the covenant, Morris would suffer undue hardship. After balancing the equities, the district court crafted an order it deemed reasonable under the circumstances. When asked to broaden the scope of the order, the court refused. Joint Appendix at 144-45, 151. We find that the district court's order enjoining Morris from the use or disclosure of confidential information he acquired at Microscan provides Baxter with adequate protection. The one-year noncompete covenant contained in Morris's employment agreement with Baxter is overbroad, unreasonably burdensome, and unnecessary for Baxter's protection. *See North American Paper Co. v. Unterberger*, 172 Ill.App.3d 410, 122 Ill. Dec. 362, 365, 526 N.E.2d 621, 624 (1988). Accordingly, we find the noncompete covenant unenforceable as a matter of Illinois law.

## III. CONCLUSION

For the reasons discussed above, the order of the district court is affirmed.