*In re* MARRIAGE OF LESLIE JOERGER, Petitioner-Appellee, and BEVERLY JOERGER, Respondent-Appellant.

Fourth District   No. 4—91—0417

Opinion filed November 21, 1991.

Patrick James Smith, of Delano Law Offices, P.C., of Springfield, for appellant.

Michael B. Metnick and Diana Cherry, both of Metnick, Barewin & Wise, of Springfield, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

On January 30, 1991, petitioner, Leslie Joerger, Sr., filed for a dissolution of his marriage to respondent, Beverly Joerger. Petitioner also sought a temporary restraining order (TRO) and a preliminary injunction against respondent's participation in the operation of the family-owned business, the Horseshoe Lounge. The Sangamon County circuit court issued the TRO on the same date. A hearing on the preliminary injunction took place February 7 and 8, 1991. On February 8, 1991, the court granted the preliminary injunction against respondent. Respondent appeals. She argues the circuit court abused its discretion by enjoining her from participating in the tavern's operation. We disagree and affirm.

Prior to filing this action, petitioner and respondent were married for nearly 10 years. Throughout their marriage they operated the Horseshoe Lounge. Petitioner is 49 years old and presently works at and manages the tavern. He previously worked a night shift at Central States Coca-Cola Bottling Company for 15 years. His position was, however, terminated in January 1991. Respondent is 52 years old. She has been employed as a bartender or waitress over the past 25 years. Throughout her marriage, respondent worked at the family-

owned tavern until the court issued the TRO on January 30, 1991. As of February 8, 1991, the date of the hearing on the preliminary injunction, respondent had no source of income.

Petitioner testified that when he learned he would lose his job at Coca-Cola, he began to look for a building to buy for the tavern's operation. He planned to work at the tavern full time. The tavern relocated to its present location, 4136 Peoria Road, Springfield, Illinois, in the summer of 1990. Prior to that time, it operated out of leased space at 1914 North Dirksen Parkway, Springfield, Illinois. Petitioner testified he performed all tasks related to the purchase of the building for the tavern. He contacted realtors, located the building, negotiated the terms of the purchase and borrowed $10,000 from his mother for the down payment. He signed an agreement with his mother in order to borrow the money. Petitioner also testified he made all decisions regarding renovating the building to enable the tavern to open at its new location. In addition, he contributed approximately $2,000 of his $4,700 severance pay from Coca-Cola to the renovation costs. He does not dispute that the building in which the tavern is operating is marital property.

Respondent testified that when she was not working beyond 5 p.m. she accompanied petitioner in their search for a new location for the tavern. She stated she located the property which was purchased for the tavern's operation. Respondent also contended she, too, met with the realtor and she and petitioner discussed the contract for purchase of the building. She contended petitioner discussed with her how to finance the purchase of the building and agreed he would ask his mother for a loan. Both parties signed the contract for deed to the property.

Respondent also countered petitioner's testimony regarding remodeling of the tavern. She testified decisions related to remodeling were mutually made, she assisted in the selection and acquisition of necessary materials, and performed substantial cleaning tasks during the renovation stage.

Petitioner testified after completing his eight-hour shift at Coca-Cola, he went to the tavern to purchase and stock supplies, and to work on repair or remodeling tasks. He arrived at the tavern between 8:30 a.m. and 11 a.m. daily to accomplish these tasks. Three patrons of the tavern testified petitioner was present during respondent's shift, which was 8 a.m. to 5 p.m. Petitioner stated he took care of all bookkeeping related to the tavern, hired and regularly met with the accountant, obtained the requisite licenses, prepared tax forms, and handled all legal matters.

Respondent agreed petitioner performed these tasks, but testified money matters related to the tavern were a shared responsibility. However, according to her own testimony, her role in the operation of the business included tending bar, collecting the receipts generated during her 8 a.m. to 5 p.m. shift, accepting orders, and cooking. Respondent's testimony, and testimony of a bartender at the tavern, established these tasks are routinely performed by the tavern's bartenders. Two bartenders of the tavern testified respondent also hired and supervised employees of the tavern. Respondent also arranged for the tavern to carry microwaveable foods.

Debra Gay Leckrone, a bartender at the Horseshoe Lounge for seven years, called as a witness by respondent, conceded in her testimony that although respondent's role in the tavern's operation was more than a bartender, petitioner was the overall manager.

The parties agreed they were unable to operate the tavern together because of their inability to communicate. However, respondent thought they could each participate in its operation if each was at the tavern at different times. The petitioner viewed this arrangement as impractical because of their inability to communicate. Petitioner further testified tavern patrons noticed the animosity between the parties, and that if both parties continued to operate the tavern, its profits would suffer.

Petitioner's testimony suggested respondent began taking money from the tavern's cash drawer in November 1990. He conceded on cross-examination, however, even when the tavern was operating at its leased location, his earnings from Coca-Cola subsidized the tavern's expenses. This subsidization continued after the tavern relocated. In addition, records prepared by the tavern's accountant showed losses each month from June 1990 through November 1990 were relatively the same. The only month which showed a profit was July 1990, and petitioner stated that was the only month the tavern made a profit. Petitioner did not provide records for December 1990 or January 1991, which were the two months during which he suggested respondent took money from the cash drawer.

Respondent testified money was always short since they began operating the tavern and bills were not always timely paid. In addition, respondent's attorney established during cross-examination of petitioner that there was no procedure for recording when cash was removed from the tavern's cash box for expenses unrelated to the tavern. Petitioner conceded it was common practice for both parties to remove cash for other purposes without replacing it with a receipt.

At the close of the hearing, the Sangamon County circuit court issued a preliminary injunction against respondent. The court restrained respondent from participating in the tavern's operation while the dissolution proceedings were pending. In addition, it ordered petitioner to provide to respondent weekly accountings of the business expenses and receipts. Because the injunction deprived respondent of her sole source of income, the court promised her prompt hearing if she filed for temporary support.

The circuit court found preliminary injunctive relief proper because the business would be irreparably injured if both parties continued to participate in its operation and this would diminish its value as a marital asset. Although it characterized the question about which party should continue to operate the tavern as "close," the court reasoned the evidence established petitioner managed the tavern and concluded he should remain in control of its operation.

■ Petitioner is correct that the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 101 *et seq.*) grants the circuit court authority to enter temporary relief in dissolution proceedings. Section 501(a)(2) of the Act allows either party to request a preliminary injunction. (Ill. Rev. Stat. 1989, ch. 40, par. 501(a)(2).) The circuit court's authority here comes from section 501(a)(2)(iv), which states:

"(a) Either party may move for:
* * *
(2) a temporary restraining order or preliminary injunction, accompanied by affidavit showing a factual basis for any of the following relief:
* * *
(iv) providing other injunctive relief proper in the circumstances * * *." Ill. Rev. Stat. 1989, ch. 40, par. 501(a)(2)(iv).

Generally, injunctive relief is proper if the petitioner establishes by a preponderance of the evidence: (1) a protectable right is threatened; (2) petitioner would otherwise be irreparably injured; (3) there is no adequate legal remedy, and (4) the petitioner will likely prevail on the merits. (*Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 387, 483 N.E.2d 1271, 1278; *Ron Smith Trucking, Inc. v. Jackson* (1990), 196 Ill. App. 3d 59, 63, 552 N.E.2d 1271, 1275.) The court must also conclude the advantages of granting the injunction outweigh the detriment to the respondent if injunctive relief were denied. *Ron Smith Trucking, Inc.*, 196 Ill. App. 3d at 63, 552 N.E.2d at 1275; see also *Buzz Barton & Associates*, 108 Ill. 2d at 387, 483

N.E.2d at 1277-78 (discussing balancing of several factors, including a comparison of the relative hardships imposed on the parties).

The decision to grant or deny injunctive relief rests within the discretion of the circuit court. The reviewing court ensures that the circuit court did not transgress its broad discretionary powers, but will only disturb the circuit court's decision if its findings were contrary to the manifest weight of the evidence. *Ron Smith Trucking, Inc.*, 196 Ill. App. 3d at 63, 552 N.E.2d at 1275; *Lee/O'Keefe Insurance Agency, Inc. v. Ferega* (1987), 163 Ill. App. 3d 997, 1003, 516 N.E.2d 1313, 1317.

■ Respondent contends the circuit court abused its discretion in issuing the preliminary injunction because petitioner did not establish the four criteria required for injunctive relief and because she was greatly disadvantaged by the injunction. However, petitioner showed the following by a preponderance of the evidence: he had a protectable interest in the tavern, there was no adequate legal remedy, and absent injunctive relief he would suffer irreparable harm. Because the injunctive order preserved the status quo necessary to protect the tavern's value as a marital asset, petitioner did not have to show he would likely prevail on the merits after full hearing. In addition, injunctive relief was proper because the financial detriment which the injunctive order posed for respondent could be remedied if she sought temporary maintenance as the court recommended.

Respondent argues both parties have the same protectable interest because they are co-owners of the Horseshoe Lounge. She provides no authority for the principle that injunctive relief is improper where the parties share a property interest which is affected by the injunction.

For injunctive relief to be proper, the petitioner must establish a clearly identifiable right which needs protection. (*Tamalunis v. City of Georgetown* (1989), 185 Ill. App. 3d 173, 189, 542 N.E.2d 402, 413.) Petitioner's ownership interest in the family-owned tavern is clearly identifiable. Both parties signed the contract for deed in the purchase of the property. As petitioner argues, a threatened business interest is an identifiable right which may be protected by injunctive relief. *Eagle Books, Inc. v. Jones* (1985), 130 Ill. App. 3d 407, 411, 474 N.E.2d 444, 447; *In re Marriage of Weber* (1989), 182 Ill. App. 3d 212, 219, 537 N.E.2d 1024, 1028.

Petitioner testified the tavern would lose customers if respondent began tending bar there again. His testimony also suggested respondent was taking money from the tavern. The circuit court could reason-

ably believe these factors represented a risk to the profitability of the tavern and therefore threatened petitioner's business interest.

Petitioner was not required to prove his interest was greater than the respondent's interest because a preliminary injunction does not determine the merits of the case. (*Lonergan v. Crucible Steel Co.* (1967), 37 Ill. 2d 599, 611, 229 N.E.2d 536, 542; *Bryant v. Village of Sherman* (1990), 204 Ill. App. 3d 583, 588, 561 N.E.2d 1320, 1323.) The petitioner must only establish " 'a fair question' " about whether his right deserves protection. *Buzz Barton & Associates*, 108 Ill. 2d at 386, 483 N.E.2d at 1277; see also *Bryant*, 204 Ill. App. 3d at 588, 561 N.E.2d at 1323.

Uncontested testimony established petitioner handled all legal matters, prepared tax forms, obtained required licenses, and worked with the accountant on monthly records. Petitioner signed an agreement to reimburse his mother the $10,000 which she loaned him for the purchase of the tavern. Respondent did not sign the agreement. Two thousand dollars of petitioner's severance pay from Coca-Cola was also contributed to the down payment. In addition, the court found petitioner managed the tavern. As petitioner contends, these factors are sufficient to establish a protectable interest. If the business failed, petitioner's financial loss would be substantial.

Respondent next contends the petitioner's pleadings and testimony adduced at the hearing do not establish that a legal remedy was inadequate. She asserts the only evidence presented on this matter was testimony by petitioner that the tavern's bills were recently unpaid, and this evidence was contradicted by evidence that the business had not made a profit in six months. Because respondent provides no analysis of this evidence, we cannot ascertain how she proposes this contradiction represents an adequate legal remedy.

Respondent does not discuss other evidence relevant to the determination of the adequacy of a legal remedy. A legal remedy is inadequate where damages are difficult to calculate at the time of hearing. (*Eagle Books*, 130 Ill. App. 3d at 411, 474 N.E.2d at 448; *Weber*, 182 Ill. App. 3d at 220, 537 N.E.2d at 1029.) Petitioner argues testimony that respondent was removing money from the cash drawer supports the court's conclusion a legal remedy was inadequate because it would be difficult, if not impossible, to establish future revenues. The accountant's monthly records could possibly establish previous revenue which could provide a basis for calculating future damages.

However, for a legal remedy to preclude injunctive relief, the remedy must be, "clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable rem-

edy." (*Borrowman v. Howland* (1983), 119 Ill. App. 3d 493, 501, 457 N.E.2d 103, 108; see also *Tamalunis*, 185 Ill. App. 3d at 189-90, 542 N.E.2d at 413.) Allowing both parties to continue to operate the tavern and requiring petitioner to seek damages after the tavern's value plummeted due to loss of customers was simply not the most practical and efficient remedy here. Testimony showed the customers would not patronize the tavern if both parties continued to operate it. Potential loss of future profits and of customers made injunctive relief proper. *Eagle Books*, 130 Ill. App. 3d at 411, 474 N.E.2d at 448.

The court's remedy was also adequate, prompt and complete. It required petitioner to provide accountings to respondent, and guaranteed respondent a prompt hearing on temporary maintenance because the injunction deprived her of her sole source of income.

Respondent's third contention is that petitioner did not show he would suffer irreparable harm absent injunctive relief. However, the injury a party fears need not be irreparable or incapable of compensation, but must merely "denote[ ] transgressions of a continuing nature." (*Tamalunis*, 185 Ill. App. 3d at 190, 542 N.E.2d at 413.) Omitted from respondent's discussion is petitioner's testimony that respondent was taking money from the tavern's cash drawer during the last three months she tended bar. Although this testimony was contradicted by respondent, the court could reasonably have viewed the loss of profits as a continual transgression which would cause irreparable injury to petitioner's interest and to the marital estate.

The parties agreed because of hostilities between them and their inability to communicate, neither could operate the tavern while the other was present. Testimony suggested petitioner's management tasks were necessarily carried out during the hours which respondent worked at the tavern. Petitioner's testimony that patrons noted the tension between the parties suggests if both were present, the atmosphere at the tavern would not be conducive to a profitable business.

In addition, as petitioner maintains, his testimony that respondent was removing money from the tavern's cash drawer may have established the potential for irreparable harm to the tavern's profits and, therefore, also to marital assets if respondent was not enjoined from operating the tavern. Petitioner need not prove respondent was dissipating tavern assets. The mere threat of dissipation can be considered by the court in determining the risk of irreparable harm. *Weber*, 182 Ill. App. 3d at 220, 537 N.E.2d at 1029.

Respondent next argues petitioner has not established the fourth criterion for injunctive relief. She contends he has not shown he is likely to prevail after full hearing on the merits. An exception to the

necessity of establishing this prong occurs when the property at issue may be destroyed or the petitioner is seeking to maintain the status quo. *Blue Cross Association v. 666 North Lake Shore Drive Associates* (1981), 100 Ill. App. 3d 647, 650-51, 427 N.E.2d 270, 272; *Alexander v. Standard Oil Co.* (1977), 53 Ill. App. 3d 690, 698, 368 N.E.2d 1010, 1015.

Respondent concedes where the injunction is issued to maintain the status quo, a party need not establish this prong of the test. However, she contends because the injunctive relief changed the status quo, petitioner had to show he was likely to succeed on the merits. Respondent concludes that because petitioner did not establish this, injunctive relief was improper. Generally, a preliminary injunction is a temporary remedy granted to preserve the status quo. "Status quo" is characterized by numerous courts as the "last, peaceable uncontested status which preceded the litigation." See, *e.g.*, *Lee/O'Keefe Insurance Agency, Inc.*, 163 Ill. App. 3d at 1002, 516 N.E.2d at 1317; see also *In re Marriage of Schwartz* (1985), 131 Ill. App. 3d 351, 354, 475 N.E.2d 1077, 1079-80.

Respondent contends the status quo existed when both parties operated the tavern. She argues the injunction altered the status quo by enjoining her from operating the tavern as she had for the past 10 years. Respondent further contends there was no reason to alter the status because the tavern could have continued to operate as it had during the parties' marriage. This contention ignores uncontroverted testimony by both parties that neither could operate the tavern while the other was present.

Petitioner argues *Weber* (182 Ill. App. 3d 212, 537 N.E.2d 1024) supports his view that he need not establish the likelihood he will succeed on the merits because the injunctive relief is requested in conjunction with a dissolution proceeding. *Weber* characterized the dissolution proceeding as a "no win" situation and concluded that determining the likelihood of success on the merits before issuing injunctive relief is not helpful. *Weber*, 182 Ill. App. 3d at 220-21, 537 N.E.2d at 1029.

However, the injunction issued in *Weber* restrained respondent from interfering with his wife's participation in the operation and management of a family-owned business while dissolution proceedings were pending. (*Weber*, 182 Ill. App. 3d at 217, 537 N.E.2d at 1027.) This is distinct from our case. The *Weber* court did not need to determine the likelihood of the petitioner's success on the merits because the injunctive relief preserved the status quo. Prior to the filing of the dissolution petition, the wife participated in the management and op-

eration of the business. The injunction preserved this status. *Weber*, 182 Ill. App. 3d at 215-17, 537 N.E.2d at 1026-27.

Respondent also relies on *Weber*, which she argues shows that the circuit court abused its discretion. She contends the cases are factually identical because, in each, the issue was whether injunctive relief is proper when dissolution proceedings are pending and one spouse is attempting to enjoin the other from participating in the operation of a family-owned business.

Respondent ignores the essential difference between *Weber* and the instant case. The *Weber* court specifically found the party who sought the preliminary injunction—the wife moved to restrain her husband from terminating her interest in a business they founded—played an active role in the management of the business. (*Weber*, 182 Ill. App. 3d at 219, 537 N.E.2d at 1028-29.) The circuit court in the instant case reasonably concluded the management duties were performed by petitioner, not by respondent nor shared by the parties. The only evidence that respondent performed management tasks was testimony she hired and supervised other bartenders and she ordered microwaveable foods. She did not deny petitioner handled the books, all legal matters and licensing. Although she testified the parties shared financial responsibilities, she did not explain her role in these matters.

We need not rely on *Weber* to find that the trial court amply exercised its discretion in issuing the preliminary injunction. Contrary to respondent's argument, the court did not alter the status quo. Because it did not alter the status quo, petitioner was not required to show he would likely prevail on the merits after full hearing. *Blue Cross Association*, 100 Ill. App. 3d at 650-51, 427 N.E.2d at 272; *Alexander*, 53 Ill. App. 3d at 698, 368 N.E.2d at 1015.

Another interpretation of the "status quo" to be preserved by a preliminary injunction is the status quo necessary to prevent dissipation or destruction of the property in question. (*Gannett Outdoor v. Baise* (1987), 163 Ill. App. 3d 717, 721, 516 N.E.2d 915, 918; *Keeshin v. Schultz* (1970), 128 Ill. App. 2d 460, 469, 262 N.E.2d 753, 757-58.) The court made clear in its findings and order, its primary concern was to protect the value of the tavern as a marital asset from dissipating. The court did not abuse its discretion in determining the status quo most appropriate to protect the marital estate was to allow petitioner to continue to manage the tavern, and to restrain respondent from participating in its operation.

Respondent's final argument is injunctive relief was improper because it deprived her of employment. Somehow, according to respond-

ent, this makes her loss greater than petitioner's. In weighing the benefit and detriment to the parties, respondent could obtain employment as a bartender elsewhere. The court also encouraged her to seek temporary maintenance because it recognized the injunction denied her income. The court amply addressed respondent's financial detriment. In addition, the court's primary impetus for the injunctive order was to protect against the dissipation of the tavern's value as a marital asset. Viewed in this light, the court's order benefits both parties by preserving a marital asset from which both will benefit when the marital property is distributed. The advantages of the preliminary injunction outweigh the disadvantages which the injunction poses for respondent.

Although the court found the question of which party to enjoin a "close" question, its decision to allow petitioner to continue to manage the tavern, and to enjoin respondent from participating in its operation, is well within the realm of the court's broad discretionary powers.

We affirm the circuit court's ruling.

Affirmed.

LUND, P.J., and STEIGMANN, J., concur.