DECKER, BERTA AND COMPANY, LTD., Plaintiff-Appellee, v. RAYMOND M. BERTA, Defendant-Appellant.

Fourth District  No. 4—91—0353

Opinion filed February 13, 1992.—Rehearing denied March 16, 1992.

Dunn, Goebel, Ulbrich, Morel & Hundman, of Bloomington (William T. Hundman, of counsel), for appellant.

George L. Chesley, of Chesley & Wilson, of Bloomington, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

Plaintiff, Decker, Berta & Company (the Company), an accounting firm, sued to prevent defendant, Raymond Berta, a former partner of the Company, from violating a restrictive covenant not to compete with plaintiff. The trial court granted a preliminary injunction enforcing the restrictive covenant. Defendant appeals and we affirm.

## I. FACTS

After Berta graduated from college in 1976, he was introduced to Charles R. Decker by Richard Belletini, owner of a chain of grocery stores and a client of Decker's at the time. (Berta had known Belletini since 1967 and would eventually marry his daughter.) Berta went to work with Decker in 1979 and the two subsequently formed a partnership. Later that year, the partnership changed to a corporation

with Decker holding 90% of the stock and Berta holding 10% of the stock. Berta later increased his stock ownership interest to 12½%.

In the spring and early summer of 1985, the accounting firm suffered cash flow problems. Specifically, the firm could not make payments due on bank loans and on loans made to the firm by some of its clients. The firm owed approximately $180,000, and both Decker and Berta were personally liable for the debt. Decker negotiated a deal with his father, G. Russell Decker, to provide capital to the firm, and on October 1, 1985, the firm was sold to G. Russell Decker for $237,000. In exchange, the firm executed a note in that amount in favor of G. Russell Decker. In exchange for their stock, Berta received $3,200 and Charles Decker received $12,000. The firm used the funds from the sale of the firm to pay off its debts. The new firm was incorporated and the Company was created.

At the insistence of G. Russell Decker and contemporaneous with his purchase of the firm, the Company and Berta entered into an employment contract dated October 1, 1985. The contract included terms for compensation and was to run until September 30, 1990. The contract also included a restrictive covenant enforceable for three years following the termination of the contract. Specifically, that paragraph stated as follows:

> "RESTRICTIVE COVENANT. For a period of three (3) years from the date of the termination of his employment, the Employee will not, within a thirty-five (35) mile radius of any present places of business of Employer, directly or indirectly own, manage, operate, join, control, be employed or participate in the ownership, management, operation, or control of, or be connected in any manner with any business of the type and character of business engaged in by the Employer at the time of such termination."

At the time the contract was signed, the company had offices in Normal, Seneca, and Coal City, Illinois. The offices in Seneca and Coal City have since closed.

The contract also contained the following covenant:

> "DISCLOSURE OF INFORMATION. The Employees recognize and acknowledge that the list of the Employer's customers, as it may exist from time to time, is a valuable, special, and unique asset of the Employer's business. The Employees will not, during or after the term of their employment, disclose the list of the Employer's customers or any part thereof to any person, firm, corporation, association, or other entity for any reason or purpose whatsoever. In the event of a breach or

threatened breach by an Employee of the provisions of this paragraph, the Employer shall be entitled to an injunction restraining said Employee from disclosing, in whole or in part, the list of the Employer's customers. Nothing herein shall be construed as prohibiting the Employer from pursuing any other remedies available to him for such breach."

When the contract ended on September 30, 1990, Berta began working for Allsup & Company (Allsup), an accounting firm in Bloomington, Illinois.

While employed by the Company, Berta spent approximately 85% of his time servicing the Belletini Red Fox grocery stores account. When Berta joined Allsup, Belletini moved his account to Allsup. Berta also contacted other former clients, informing them that he had joined Allsup and would continue to work for them if they so wished. Several of these clients asked the Company to forward photocopies of their accounts and records to Allsup so that Berta could service their accounts. Berta did not remove any clients lists from the Company, but used his own memory and phone books to compile a mailing list.

The Company sued Berta on October 30, 1990, to enforce the restrictive covenant. On May 9, 1991, the trial court conducted a hearing on the Company's motion for a preliminary injunction and granted it. Berta brings this interlocutory appeal from the trial court's order.

## II. Analysis

### A. *Requirements for a Preliminary Injunction*

A party seeking a preliminary injunction must establish by a preponderance of the evidence that (1) he possesses a certain and clearly ascertainable right that needs protection; (2) he has no adequate remedy at law; (3) irreparable injury will occur without the injunction; and (4) he has a reasonable likelihood of success on the merits of the case. (*Ron Smith Trucking, Inc. v. Jackson* (1990), 196 Ill. App. 3d 59, 63, 552 N.E.2d 1271, 1275.) In deciding whether to grant a motion for a preliminary injunction, the trial court must balance the equities and relative inconvenience to the parties and determine whether a greater burden will be imposed on the defendant by granting the motion than on the plaintiff by denying it. (*Lee/O'Keefe Insurance Agency, Inc. v. Ferega* (1987), 163 Ill. App. 3d 997, 1003, 516 N.E.2d 1313, 1317.) The sole question before us on appeal is whether the trial court abused its discretion in granting that motion, and we will not disturb the trial court's findings unless they are against the

manifest weight of the evidence. *Ron Smith Trucking*, 196 Ill. App. 3d at 63, 552 N.E.2d at 1275.

### B. *Restrictive Covenants Generally*

■ In examining restrictive covenants, courts usually confront two conflicting principles: (1) the freedom to contract, and (2) the policy against contractual restraints of trade. Because restrictive covenants are restraints on trade, strict adherence to this policy would result in judicial rejection of all such covenants. (See Whitmore, *A Statistical Analysis of Noncompetition Clauses in Employment Contracts*, 15 J. Corp. L. 483, 486-87 (1990) (hereinafter Whitmore).) However, courts will not enforce restrictive covenants that prevent competition *per se*. (See *Lee/O'Keefe*, 163 Ill. App. 3d at 1003, 516 N.E.2d at 1317.) In an attempt to reconcile these conflicting principles, courts have applied a doctrine of "reasonableness" when examining restrictive covenants (*Retina Services, Ltd. v. Garoon* (1989), 182 Ill. App. 3d 851, 855, 538 N.E.2d 651, 652; Whitmore, 15 J. Corp. L. at 487-88), a standard which necessarily requires a case-by-case analysis of the facts and circumstances of each case. *Lee/O'Keefe*, 163 Ill. App. 3d at 1003, 516 N.E.2d at 1317; Whitmore, 15 J. Corp. L. at 488.

■ Restrictive covenants often appear in employment contracts and contracts for the sale of a business. Although the language and effect of these two types of contracts may appear similar, courts evaluate these restrictive covenants differently. (Whitmore, 15 J. Corp. L. at 484 n.1.) The difference between these two types of contracts exists in the nature of the interests sought to be protected. (See *O'Sullivan v. Conrad* (1976), 44 Ill. App. 3d 752, 755, 358 N.E.2d 926, 929.) Courts impose a more stringent test of reasonableness on restrictive covenants in employment contracts than they do on restrictive covenants ancillary to the sale of a business. The basis for the distinction rests upon the fact that a purchaser in a sale of a business context holds more bargaining power than an ordinary employee in an employment context. *Hamer Holding Group, Inc. v. Elmore* (1990), 202 Ill. App. 3d 994, 1007, 560 N.E.2d 907, 916.

Thus, in order to determine the appropriate standard of scrutiny, we must first decide whether the clauses at issue appear in a sale-of-business contract or an employment contract. The trial court in this case based its order on the expectation interest of G. Russell Decker at the time he purchased the accounting firm from his son and Berta. The trial court granted the preliminary injunction and enforced the

restrictive covenant as a covenant ancillary to the sale of the business. In relevant part, the trial court's order states as follows:

"In this case this G. Russell Decker loaned the sum of $237,200.00 to Decker, Berta and Co., Ltd. and purchased Decker, Berta and Co., Ltd. upon the premise that the firm would continue to be operated by Charles R. Decker and Raymond Berta. If either one or both of them left to do accounting work on their own or for another accounting firm, it was conceivable that the firm's clientele would be lost to the departing employee or employees. The purchaser would be left with an office lease, some computers; and whatever personal property is needed by an accounting firm. His assumption and payment of $237,200.00 in firm debts and contract to purchase of the firm would have been rendered totally illusory.

\*\*\*

\*\*\* [W]hen this case is viewed from the aspect of a contract for the sale of a business, particularly a service business in which there is great emphasis placed upon confidential, personal face-to-face delivery of those services with a very small element of the business being the machinery and equipment necessary to produce the service, then this covenant must be viewed in a different light.

When the $237,200.00 loan of G. Russell Decker to a two principal accounting firm is considered the duration of the five year employment term followed by a three year non-competition restrictive covenant, appears reasonable. A five year restriction in another accountant's restrictive covenant was sustained. *Rhoads v. Clifton Gunderson and Co.*[,] 89 Ill. App. 3d 751, 411 N.E.2d 1380 (1980)."

In *Hamer*, the First District Appellate Court analyzed the distinction between a sale-of-business restrictive covenant and a restrictive covenant as part of an employment contract and wrote the following:

"Illinois courts have historically distinguished between the two types of covenants, based on the unique interest which each seeks to protect. Whereas a covenant ancillary to an employment contract shields the employer from the possibility of losing his clientele to an employee who appropriates proprietary customer information for his own benefit, and also shields him from the possibility of losing customers with whom he enjoys a near-permanent relationship, a covenant ancillary to the sale of a business ensures the buyer that the former owner will not walk away from the sale with the company's customers and

goodwill, leaving the buyer with an acquisition that turns out to be only chimerical." *Hamer*, 202 Ill. App. 3d at 1007, 560 N.E.2d at 916.

■ To enforce a restrictive covenant ancillary to the sale of a business, the purchaser must first show a protectable business interest which has been injured by his former employee's unfair competition. (*Hydroaire, Inc. v. Sager* (1981), 98 Ill. App. 3d 758, 764, 424 N.E.2d 719, 724.) If the purchaser establishes this interest, then the purchaser need only show that the restriction is reasonable as to time, geographical area, and scope of prohibited business activity. *Hamer*, 202 Ill. App. 3d at 1007, 560 N.E.2d at 915.

### 1. A Protectable Interest

In *Hamer*, the purchaser seeking to enforce the restrictive covenant proved a protectable business interest by simply noting that the acquisition agreement between the purchaser and purchasee explicitly required the execution and delivery of the employee's employment agreement, which contained the restrictive covenant, on or before the closing date as a condition precedent to closing the deal. (*Hamer*, 202 Ill. App. 3d at 1008, 560 N.E.2d at 916.) Therefore, the court concluded that the plaintiff had proved the employee's services were indispensable and part of the agreement to purchase the business. *Hamer*, 202 Ill. App. 3d at 1008, 560 N.E.2d at 916.

Similarly, in *Stamatakis Industries, Inc. v. King* (1987), 165 Ill. App. 3d 879, 520 N.E.2d 770, the plaintiff employer required the defendant employee to sign an employment contract as part of a purchase agreement. (*Stamatakis*, 165 Ill. App. 3d at 885, 520 N.E.2d at 774.) Because the defendant wrote the covenant himself, the appellate court enforced the covenant against him, reversing the trial court. *Stamatakis*, 165 Ill. App. 3d at 888, 520 N.E.2d at 776.

Initially, Berta contests the Company's claim that it possesses a protectable business interest by challenging the Company's standing to bring this suit. Berta contends that the decision of the trial court protects an interest belonging to G. Russell Decker, not the Company. As in *Hamer*, where a similar standing argument was raised (see *Hamer*, 202 Ill. App. 3d at 1004, 560 N.E.2d at 913-14), a clause in the employment agreement defeats defendant's claim. Paragraph 19 of the agreement states as follows: "19. ASSIGNMENT. This agreement shall inure to the benefit of and be binding upon the Employer, its successors and assigns." Although plaintiff counters defendant's assertions by arguing the ability of the Company to bring suit without referring to paragraph 19 of the employment agreement, our review

of the record shows that the Company, at the time it filed its complaint, was the legal holder of the agreement as assignee. See *Hamer*, 202 Ill. App. 3d at 1004, 560 N.E.2d at 913 (resolving issue of standing by recognizing plaintiff's status as assignee of the employment agreement).

■ We agree with the trial court's finding that the restrictive covenant in this case was ancillary to the sale of the business. The employment contract that Berta signed stated that "the Employer has today entered into an agreement with the Employees to purchase the entire business and assets [and liabilities]" of the Company. Berta testified that the parties executed all documents on the same day. Finally, Berta sold his 12½% interest in the firm and was relieved of all personal liability. Accordingly, we conclude that the trial court's finding of a restrictive covenant ancillary to the sale of the business was not contrary to the manifest weight of the evidence. We next address whether the terms of the restrictive covenant were reasonable.

## 2. Reasonableness

■ The restriction as to time and territory must not be greater than necessary to protect the buyer, yet must, at the same time, not be oppressive to the seller or injurious to the general public. (*Hamer*, 202 Ill. App. 3d at 1009, 560 N.E.2d at 917; *Russell v. Jim Russell Supply, Inc.* (1990), 200 Ill. App. 3d 855, 864, 558 N.E.2d 115, 123.) Analyzing the restrictive covenant in the present case under this standard, the trial court found it reasonable as to its geographic scope and duration because it applied within only a 35-mile radius of Normal. The court further determined that plaintiff had a substantial business interest that needed protection. The court then preliminarily enjoined Berta from practicing his profession within 35 miles of Normal, Illinois, for three years or until the preliminary injunction was dissolved.

■ Berta cites *Lee/O'Keefe* (163 Ill. App. 3d at 1005, 516 N.E.2d at 1319), for support of his argument that the three-year, 35-mile restrictions are overly broad and unreasonable. However, in *Lee/O'Keefe*, the geographic restriction was 100 miles and the durational limitation was five years. Courts in Illinois have upheld geographic restrictions of up to 75 miles (see *Hamer*, 202 Ill. App. 3d at 1009, 560 N.E.2d at 917; *O'Sullivan*, 44 Ill. App. 3d at 757-58, 358 N.E.2d at 930), and durational restrictions of at least three years (see *Hamer*, 202 Ill. App. 3d at 1009, 560 N.E.2d at 917 (upholding a three-year restriction); *Russell*, 200 Ill. App. 3d at 864-66, 558 N.E.2d at 123 (upholding a 10-year restriction); *O'Sullivan*, 44 Ill. App. 3d at 757-58,

358 N.E.2d at 930 (upholding a five-year restriction)). We cannot say that the trial court's conclusion was manifestly erroneous.

A review of the record reveals an interesting coincidence. Defendant filed a motion to clarify order on April 22, 1991, and an amended motion to clarify order on April 24, 1991. In these motions, defendant states that he has made arrangements to work at Allsup's Pontiac, Illinois, office, which is 33.9 miles from plaintiff's former office, which is located in Normal. (Plaintiff has since relocated its office to Bloomington, which is 36 miles from Pontiac.) In his empirical study, Whitmore found that the average distance of mileage restrictions found to be reasonable in the 1980's was 33.9 miles. (Whitmore, 15 J. Corp. L. at 511.) Whitmore also found that the average time restriction found to be reasonable by courts in the 1980's was 21.3 months. (Whitmore, 15 J. Corp. L. at 515.) Furthermore, he found that restrictive covenants of a 36-month duration were relatively long (Whitmore, 15 J. Corp. L. at 515 n.189), and that "clauses approaching two years rest on more uncertain ground." Whitmore, 15 J. Corp. L. at 516.

While this court has not based its affirmance of the circuit court's findings of reasonableness on this empirical study, those findings nonetheless provide further support for the circuit court's determination that the geographic limitation here is reasonable, although its durational limitation may be slightly greater than usual. However, because we conclude that all of these findings are not contrary to the manifest weight of the evidence, we affirm.

### III. Conclusion

For the reasons stated, we affirm the circuit court's order granting the preliminary injunction.

Affirmed.

GREEN, P.J., and LUND, J., concur.