CENTRAL WATER WORKS SUPPLY, INC., Plaintiff-Appellee, v. WILLIAM FISHER *et al.*, Defendants-Appellants.

Fourth District   No. 4—92—0460

Opinion filed February 4, 1993.

COOK, J., specially concurring.

George L. Chesley, of Chesley & Wilson, of Bloomington, for appellants.

James P. Ginzkey, of Hayes, Schneider, Hammer, Miles & Cox, of Bloomington, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff Central Water Works Supply, Inc., was granted a preliminary injunction against defendant William Fisher. Defendant was enjoined from soliciting, contacting customers of plaintiff, or selling products similar to products sold by plaintiff, or in any manner competing with plaintiff in a specific geographical area pursuant to a covenant not to compete contained in plaintiff's shareholders' agreement. Defendant brings this interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)), contending the circuit

court erred in granting the preliminary injunction because (1) plaintiff has no protectable interest and (2) the geographical scope of the preliminary injunction is overbroad. Defendant also contends the circuit court erred in excusing plaintiff from posting bond in this matter. We affirm.

Plaintiff, a wholesale distributor of water and sewer supplies, was formed in August 1990 by John Delich, defendant, Stan Schroedor, and Steven Mehnke. Plaintiff supplies over 100 products to municipalities, underground utility contractors, private industry, developers, subdivisions, city and State projects. Prior to forming plaintiff, Delich and defendant were employed by Water Products Company, a direct competitor of plaintiff. Delich was general manager of Water Products and defendant was the sales representative. Both men had become unhappy with Water Products and they decided to either attempt to purchase the Bloomington branch of that company or form their own company to compete with Water Products. Water Products has a branch in Bloomington but its corporate office, which covers the Chicago metropolitan area, is located in Aurora.

When their bid to purchase the Bloomington branch was unsuccessful, these four individuals formed plaintiff. These four men were the initial shareholders and directors of the company and Delich was president. As of the time of the hearing, defendant was still a shareholder and director of plaintiff. However, defendant took no active part in the management of plaintiff. Delich and defendant contributed $100,000 cash and signed off on a Small Business Administration (SBA) loan for $300,000. Each gave his personal residence and possessions as collateral for the SBA loan. In February 1991, plaintiff secured another SBA loan for $150,000 with a $50,000 cash contribution by Delich and defendant. In total, plaintiff has an outstanding debt of approximately $400,000.

In order to secure the SBA loan, the men were required to provide personal financial information and work history of the initial shareholders. Moreover, they had to submit a proposed budget for the first three years as well as sales and gross profit forecasts. The initial budget was $3 million and defendant's share in the sales forecast was 50% of the budget.

The shareholders entered into a shareholders' agreement which listed the following breakdown of shares issued: John Delich, 55 shares; William Fisher, 25 shares; Stan Schroedor, 10 shares; and Steve Mehnke, 10 shares. Paragraph 15 of the shareholders' agreement stated:

"*COVENANT NOT TO COMPETE.* The parties hereto are all employees of the Company and each is important to the success of the new enterprise. The parties agree that if they should terminate their employment with the Company, that they will not compete with the Company in the geographical area in which the Company is then doing business for a period of three years after the termination of employment."

This agreement was executed by all four shareholders on February 21, 1991. Delich testified that the purpose of the covenant not to compete was "to basically demonstrate on paper the commitment and the loyalty of the initial parties involved in starting the company." This showing of commitment was for the benefit of the bank issuing the SBA loan as well as to evidence the shareholders' commitment to each other and to the company.

In September 1991, defendant ended his employment with plaintiff. On April 7, 1992, defendant began working again for Water Products as a salesman in the same geographical area as he did for plaintiff with many of the same customers. Defendant was in the midst of divorce proceedings in which he was forced to sell his home. In order to complete the sale of his home, defendant was released from his pledge of his home as security for the SBA loan. Defendant remained personally obligated on the SBA loans.

Delich and defendant met informally in March 1992. At that meeting, they discussed the possibility that defendant would begin working for a competitor of plaintiff. Defendant testified Delich did not offer him a job but that was only because he had already stated he could not return to work for plaintiff at the salary he had when he originally left plaintiff. Defendant testified that Delich stated that his going to work for Water Products would have a serious negative impact on plaintiff.

On April 13, 1992, plaintiff filed its petition for preliminary injunction seeking to enforce the covenant not to compete contained in the shareholders' agreement. Following a hearing on this matter, on May 6, 1992, the circuit court granted the preliminary injunction. This interlocutory appeal followed.

A preliminary injunction is a provisional remedy granted to preserve the status quo. (*Ron Smith Trucking, Inc. v. Jackson* (1990), 196 Ill. App. 3d 59, 63, 552 N.E.2d 1271, 1275.) The four factors which must be established before an injunction will be granted are that (1) a clearly ascertained right in need of protection exists; (2) irreparable harm will occur without the injunction; (3) there is no adequate remedy at law for the injury; and (4) success on the merits is

likely. (*Hartlein v. Illinois Power Co.* (1992), 151 Ill. 2d 142, 156, 601 N.E.2d 720, 726-27.) In addition to consideration of the above criteria, the trial court must conclude that the benefits of granting the injunction outweigh the possible injury which defendant might suffer as a result thereof. (*Lee/O'Keefe Insurance Agency, Inc. v. Ferega* (1987), 163 Ill. App. 3d 997, 1003, 516 N.E.2d 1313, 1317.) The sole question before us on appeal is whether the trial court abused its discretion in granting the preliminary injunction. We will not disturb the trial court's findings unless they are against the manifest weight of the evidence. *Decker, Berta & Co., Ltd. v. Berta* (1992), 225 Ill. App. 3d 24, 27-28, 587 N.E.2d 72, 74.

The propriety of injunctive relief in the present case depends upon the enforceability of the restrictive covenant at issue. Because such covenant operates at least as a partial restraint of trade, it is scrutinized carefully by the courts to ensure that its intended effect is not the prevention of competition *per se*. *Lee/O'Keefe*, 163 Ill. App. 3d at 1003, 516 N.E.2d at 1317.

Restrictive covenants often appear in employment contracts and contracts for the sale of a business. Courts evaluate these restrictive covenants differently because of the difference in the nature of the interests sought to be protected. Courts impose a more stringent test of reasonableness on restrictive covenants in employment contracts than they do under restrictive covenants ancillary to the sale of a business. The basis for the distinction rests upon the fact that a purchaser in the sale of a business context holds more bargaining power than an ordinary employee in an employment context. *Decker, Berta & Co., Ltd.*, 225 Ill. App. 3d at 28, 587 N.E.2d at 74.

If the covenant is ancillary to the sale of a business by the covenantor to the covenantee, then all the covenantee must show is that the restriction is reasonable as to time, geographical area and scope of prohibited business activity. If, however, the covenant is ancillary only to an employment agreement, the covenantee must show additional special circumstances, such as a near-permanent relationship with his employee's customers and that, but for his association with the employer, the former employee would not have had contact with the customers, or the existence of customer lists, trade secrets or other confidential information. (*Hamer Holding Group, Inc. v. Elmore* (1990), 202 Ill. App. 3d 994, 1007, 560 N.E.2d 907, 915-16.) A covenant ancillary to an employment contract shields the employer from the possibility of losing his clientele to an employee who appropriates proprietary customer information for his own benefit, and also shields him from the possibility of losing customers with whom he enjoys a

near-permanent relationship. A covenant ancillary to the sale of a business ensures the buyer that the former owner will not walk away from the sale with the company's customers and good will, leaving the buyer with an acquisition that turns out to be only chimerical. *Hamer*, 202 Ill. App. 3d at 1007, 560 N.E.2d at 916.

In the sale of a business, the interest to be protected is the value of the good will that is purchased. In protecting the good will sold, the courts consider the fact that the bargaining position is not uneven as it is generally in an employer-employee relationship and that the courts are less likely to declare the sale of a business post-employment restraint invalid. (*Stamatakis Industries, Inc. v. King* (1987), 165 Ill. App. 3d 879, 888, 520 N.E.2d 770, 776.) Courts have also considered facts bearing on the intent of the parties to protect the integrity of a sale. *Hamer*, 202 Ill. App. 3d at 1008, 560 N.E.2d at 916.

In order to determine the appropriate standard of scrutiny, we must determine whether the covenant not to compete contained in the shareholders' agreement is more like a covenant ancillary to the sale of a business or a covenant contained in an employment contract. Defendant contends this covenant is more like that of one in an employment contract. Defendant further contends that plaintiff has no protectable interest because he cannot show defendant acquired confidential information through his employment with plaintiff and subsequently attempted to use that information for his own benefit or that the customer relationship is near permanent and that, but for his relationship with plaintiff, defendant would not have had contact with the customers in question. *Lee/O'Keefe*, 163 Ill. App. 3d at 1004, 516 N.E.2d at 1318.

On the other hand, plaintiff alleges the covenant in question here is more like one ancillary to the sale of a business. Plaintiff contends the covenant was part and parcel of the business transaction forming the company and that the parties all intended it to be evidence of good faith or good will to attempt to make the company successful. Plaintiff argues there was no unequal bargaining power between the parties.

■ We agree with plaintiff that this covenant not to compete is more akin to one ancillary to the sale of a business. As an initial shareholder and capital contributor, defendant essentially purchased a portion of the new company. Each of the four initial shareholders quit his employment with Water Products to form plaintiff. They each signed the shareholders' agreement with the intention that each would be bound by the covenant and not walk away with the customers and good will brought from Water Products. The covenant was

included in the agreement to be outward evidence of their loyalty and commitment to the company and each other and to ensure that they would not do anything to hinder the success of the company. All of the initial shareholders were of equal bargaining power when they drafted and entered into the shareholders' agreement.

This covenant is not like one ancillary to an employment contract for the following reasons. First, there is not a near-permanent relationship with the customers nor can it be said that, but for defendant's association with plaintiff, he would not have had contact with the customers. The evidence indicated that the four initial shareholders had contact with the customers because of their association with Water Products rather than plaintiff. By forming a new company to directly compete with Water Products, the shareholders hoped to lure customers away from Water Products to become customers of plaintiff. All of the business conducted, whether by Water Products or plaintiff, was done through competitive bidding and the pricing system was the same for both companies.

Accordingly, we conclude this covenant is more analogous to a covenant not to compete which is ancillary to the sale of a business. To enforce such a covenant, the purchaser must first show a protectable business interest which has been injured by his former employee's unfair competition. If the purchaser establishes this interest, then the purchaser need only show that the restriction is reasonable as to time, geographical area and scope of prohibitive business activities. *Decker, Berta & Co., Ltd.*, 225 Ill. App. 3d at 30, 587 N.E.2d at 75.

■ Plaintiff has a protectable interest in its success as a company. Delich testified defendant was responsible for 50% of the sales forecast when the company was formed. Defendant was one of the top salesmen at Water Products. Inasmuch as plaintiff and Water Products are in direct competition and defendant personally knows the customers, allowing defendant to solicit business in the geographical area would certainly cause injury to plaintiff by taking away sales. We find plaintiff has a protectable interest which has been and will be injured by defendant's working for Water Products in the same geographical area in which plaintiff does business.

We must next address whether the terms of the restrictive covenant were reasonable. Defendant does not challenge the three-year limitation contained in the covenant. Durational restrictions of three years have been upheld. (*Hamer*, 202 Ill. App. 3d at 1009, 560 N.E.2d at 917.) Rather, defendant contends the geographical scope is overbroad.

The covenant itself described the restricted area as "the geographical area in which the Company is then doing business." The trial court found this area to be that consisting of "Bloomington west to the western border of Peoria County, straight North to Interstate 80, Interstate 80 across to Indiana border (this includes the counties which border on I-80), Indiana border to Effingham, Effingham straight to Sangamon County back to Peoria, and all counties contained within said boundaries."

Defendant testified that Water Products has a branch office in Bloomington but its corporate office is located in Aurora. Water Products services Cook County as well as Du Page County, two areas in which plaintiff does not do business. These areas are outside the geographical area described in the court's order granting the preliminary injunction. The trial court noted defendant was not enjoined from working for Water Products, but only from contacting customers in that specifically delineated area. Inasmuch as defendant is able to contact customers in the Cook and Du Page County areas to earn his livelihood, we do not find the geographical limits set by the trial court were manifestly erroneous.

Furthermore, we believe plaintiff has established the other elements necessary for us to affirm the granting of a preliminary injunction. First, a threatened business interest is an identifiable right which may be protected by injunctive relief. (*In re Marriage of Joerger* (1991), 221 Ill. App. 3d 400, 405, 581 N.E.2d 1219, 1224.) Next, the injury the party fears need not be irreparable or incapable of compensation but merely denote transgressions of a continuing nature. The mere threat of dissipation can be considered by this court in determining the risk of irreparable harm. (*Joerger*, 221 Ill. App. 3d at 407, 581 N.E.2d at 1225.) The loss of customers and sales and the threat of the continuation of such loss to a legitimate business interest is sufficient to show that plaintiff will suffer irreparable injury unless protected by the court. (*Eagle Books, Inc. v. Jones* (1985), 130 Ill. App. 3d 407, 411, 474 N.E.2d 444, 447.) Delich testified that if defendant is allowed to solicit business in the Bloomington area, plaintiff will be severely harmed and will lose customers and sales. Thus, plaintiff has established that it will suffer irreparable injury unless protected by the court.

A legal remedy is inadequate where damages are difficult to calculate at the time of the hearing. (*Eagle Books*, 130 Ill. App. 3d at 411, 474 N.E.2d at 448.) Here, because of the potential loss of profits and customers to plaintiff by defendant's competition in the geograph-

ical area, the damages are difficult to calculate. Thus, plaintiff has established the inadequacy of a legal remedy.

Finally, generally a party seeking a preliminary injunction must show that success on the merits is likely. Because of our determination that formation of the plaintiff and the covenants included therein is comparable to the sale of a business, there is a fair question of the existence of the right to enforce the covenant and likelihood of success.

Defendant also contends the circuit court abused its discretion in denying his request that plaintiff give bond in this matter. He alleges plaintiff is thinly financed and its ability to respond in damages is questionable.

Section 11—103 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 11—103) provides:

> "Bond. The court in its discretion, may before entering a restraining order or a preliminary injunction, require the applicant to give bond in such sum, upon such condition and with such security as may be deemed proper by the court, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."

When a preliminary injunction order is issued after notice and hearing, it is not error for the trial court to issue the injunction without bond. Failure to request a bond or object to the lack of a bond constitutes waiver of the necessity for a bond. (*Hoover v. Crippen* (1987), 151 Ill. App. 3d 864, 869, 503 N.E.2d 848, 853; *K.F.K. Corp. v. American Continental Homes, Inc.* (1975), 31 Ill. App. 3d 1017, 1021-22, 335 N.E.2d 156, 159-60.) At the hearing on plaintiff's petition for a preliminary injunction when the injunction was issued, defendant did not request a bond or object to the lack of a bond. He has thus waived the issue.

In his motion to dissolve the preliminary injunction, defendant alleged the preliminary injunction was erroneously issued because it was entered without the bond requirement. He asserts this was sufficient to bring the issue to the circuit court's attention in order to preclude a finding of waiver. Even were we to accept defendant's conclusion as true, and find he has not waived this issue, we believe his position is meritless.

Where a preliminary injunction has been properly issued, any error in failing to require a bond or in setting an inadequate bond does not injure the party against whom the order is allowed, and the order will not be reversed simply because of the absence or inadequacy of

bond. (*American Warehousing Services, Inc. v. Weitzman* (1988), 169 Ill. App. 3d 708, 713, 533 N.E.2d 366, 369.) Because the preliminary injunction was properly issued, any error in not requiring a bond is not a ground for reversal.

Thus, we find the trial court did not abuse its discretion in granting the preliminary injunction.

Affirmed.

GREEN, J., concurs.

JUSTICE COOK, specially concurring:

Plaintiff corporation was formed in August 1990 by Delich, Fisher, Schroedor, and Mahnke. Each of the four quit his employment with a competing corporation, Water Products, in order to form plaintiff. Delich had been general manager of Water Products; Fisher had been sales representative and one of Water Products' top salesmen. The contacts with customers established by each of the four shareholders had been developed through his association with Water Products, not through any employment with plaintiff. Plaintiff allowed Mahnke to return to Water Products in August 1991. Fisher left his employment with plaintiff after only a year, in September 1991, and returned to work at Water Products in April 1992.

The majority opinion states it must "determine whether the covenant not to compete contained in the shareholders' agreement is more like a covenant ancillary to the sale of a business or a covenant contained in an employment contract." (240 Ill. App. 3d at 957.) The majority opinion appropriately decides the covenant cannot be sustained as one ancillary to an employment contract, but goes on to conclude the covenant is therefore "more analogous to a covenant not to compete which is ancillary to the sale of a business." (240 Ill. App. 3d at 958.) There is a third possibility, that the covenant is not ancillary to anything, and is therefore unenforceable as an unreasonable restraint on competition. Restatement (Second) of Contracts §187 (1981); *Marathon Petroleum Co. v. Chronister Oil Co.* (C.D. Ill. 1988), 687 F. Supp. 437 (sale of two gas stations did not justify covenant prohibiting seller from opening any other stations).

As the majority states, with the sale of a business the interest to be protected is the value of the good will that is purchased; "[a] covenant ancillary to the sale of a business ensures the buyer that the former owner will not walk away from the sale with the company's customers and good will, leaving the buyer with an acquisition that

turns out to be only chimerical." (240 Ill. App. 3d at 957.) In this case it is difficult to view plaintiff corporation as purchasing any good will from defendant Fisher or from anyone else. If any right to a relationship with customers or good will existed here, it belonged to Water Products and was never transferred to plaintiff.

Plaintiff will be injured if Fisher competes with it, just as Water Products was injured when Fisher and the others left, but mere avoidance of injury is not sufficient justification to enforce a covenant not to compete. All competition is more or less injurious to the participants, but public policy favors competition. The fact that Fisher is a very good salesman and any company losing him will be harmed does not justify enforcing a covenant not to compete in an employment agreement. There must be something in the nature of the business which engenders customer loyalty (*Office Mates 5 North Shore, Inc. v. Hazen* (1992), 234 Ill. App. 3d 557, 571, 599 N.E.2d 1072, 1082), and there was nothing like that in plaintiff's business here.

Instead of attempting to force this situation into the categories of (1) employment contract or (2) sale of business, we should take a broader view. The reason covenants not to compete are deemed valid only if ancillary to some other transaction is because such covenants will be sustained only where their benefits outweigh their harm. If no other transaction accompanies the covenant there is no benefit to be balanced. A naked covenant against competition is *per se* invalid. The Restatement recognizes that the two categories discussed in the Illinois cases are not exclusive. (Restatement (Second) of Contracts §188, Comment *e*, at 43-44 (1981).) The Restatement expressly mentions a third category, that of a promise by a partner not to compete with the partnership. (Restatement (Second) of Contracts §188(2)(c) (1981).) I would be willing to go further, and recognize that a transaction where individuals establish a business in which they will be employed is a sufficient ancillary transaction to support an enforceable covenant not to compete.

The question may be asked: "where employees form a business, can they agree to exchange covenants not to compete, if the nature of the business would not otherwise justify a covenant?" I believe the answer is yes. Restrictive covenants are enforced in connection with the *sale of a business* even if the nature of the business does not engender customer loyalty, that is, even if the business has no confidential information, no near-permanent customers, and provides no special contacts with customers. (See *Lee/O'Keefe*, 163 Ill. App. 3d at 1004, 516 N.E.2d at 1318.) With the sale of a business, it is only necessary to show that the restriction is reasonable in time, area, and

scope. (*Hamer*, 202 Ill. App. 3d at 1007, 560 N.E.2d at 915; *Decker, Berta & Co.*, 225 Ill. App. 3d at 30, 587 N.E.2d at 75.) A similar view should be taken of partners or others who enter into the formation of a business. The legitimate expectations of the investors are entitled to consideration. They, as well as the purchasers of a business, are entitled to a transaction which is more than "chimerical." Co-ownership of a business is a tighter bond than employment.

It is troublesome that the parties could leave Water Products, where they developed their customer contacts in the first place, and then agree not to return with those contacts to Water Products. Still, whatever rights Water Products may have against other parties will apparently exist even after this decision and should not affect it. Although a court should consider the public interest in evaluating covenants not to compete, the private interests of Water Products do not rise to that level.